

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-075-CV**

CITY OF FORT WORTH                                              APPELLANT

V.

AUDREY ROBINSON                                                  APPELLEE

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

## I.    Introduction

The City of Fort Worth (the City) appeals the trial court's denial of its plea to the jurisdiction in the lawsuit filed against it by Appellee Audrey Robinson. We hold the City conclusively established its employee's official immunity from suit, thereby establishing the City's governmental immunity. We reverse the trial court's order and dismiss this cause for lack of subject-matter jurisdiction.

## II.   Procedural History

Robinson filed suit against the City on October 27, 2008, alleging she was injured when Officer J.A. Ferguson's weapon accidentally discharged while Officer Ferguson and other Special Weapons and Tactics (SWAT) officers "set upon" the vehicle in which she was a passenger.   Although she did not specifically identify the relevant statute, Robinson alleged the district court had jurisdiction over her case because the Texas Legislature waived the City's governmental immunity for claims involving personal injury by a City employee if the employee would be liable to her under Texas law.   The City answered, asserting Robinson's claims were barred by the doctrine of governmental immunity.   The City thereafter filed its plea to the jurisdiction, which the trial court denied by order dated February 20, 2009.   This interlocutory appeal followed.   *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008).

## III.   Standard of Review

Whether the trial court had subject-matter jurisdiction is a question of law that we review de novo.   *Tex. Natural Res. Conservation Comm'n v. IT-Davy,* 74 S.W.3d 849, 855 (Tex. 2002).   A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch.*

2

*Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without regard to whether the claims asserted have merit. *Id.*

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). If, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id.* at 227; *Bland,* 34 S.W.3d at 555.

The plea to the jurisdiction standard generally mirrors that of a traditional motion for summary judgment. *Miranda,* 133 S.W.3d at 228; *see* Tex. R. Civ. P. 166a(c). The governmental unit is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Miranda,* 133 S.W.3d at 228. Once the governmental unit meets its burden, the plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Id.* We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Wise Reg'l Health Sys. v. Brittain*, 268

3

S.W.3d 799, 805 (Tex. App.—Fort Worth 2008, no pet.) (citing *Miranda*, 133 S.W.3d at 228). If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the factfinder. *Miranda*, 133 S.W.3d at 227–28. But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## IV. Factual Background

The record before the trial court at the hearing on the City's plea to the jurisdiction consisted of Robinson's original petition, the City's plea, Robinson's response, an affidavit by Officer Ferguson, and an affidavit by Robinson. Because we assume the truth of the nonmovant's evidence when reviewing a plea to the jurisdiction, *Brittain*, 268 S.W.3d at 805, we summarize the evidence in the light most favorable to Robinson, the nonmovant. Where appropriate, we acknowledge discrepancies in the evidence in footnotes.[1]

At approximately 11 a.m. on April 16, 2008, Robinson was the passenger and Clayton Warwick was the driver of a Mazda sedan parked on Katy Street in Fort Worth, Texas. Officer Ferguson, his partner Officer D. Nelson, and other members of the SWAT Unit were also in the area, on burglary detail. During

---

[1] Although Robinson's and Officer Ferguson's affidavit testimony differ, we hold the differences do not present genuine issues of material fact. We explain our holding in section V, below.

the operation, the officers became suspicious of Warwick's vehicle because they initially believed it to be empty and abandoned. Looking into Warwick's vehicle as he drove past, Officer Ferguson saw Warwick in the driver seat[2] mixing what Officer Ferguson believed to be a narcotic in an aluminum can bottom. Officer Ferguson believed the substance to be a narcotic because, in his experience, narcotics users commonly prepare narcotics by mixing them in this manner before using them with a syringe. The substance was later determined to be heroin.

Officer Ferguson continued past Warwick's vehicle and turned around at the next block. He called Officer K.W. Clowers, who was also working with the SWAT unit at the time, to advise him of the narcotics sighting. Officer Clowers drove toward Warwick's vehicle from the front, stopping his truck two feet from the front bumper, and Officer Ferguson drove toward Warwick's vehicle from behind, stopping his truck two feet from the rear bumper. Officer Clowers, wearing jeans and a t-shirt, approached from the front, and Officer Ferguson, wearing jeans and a polo shirt, approached from the rear. The

---

[2] Officer Ferguson did not initially see Warwick in the vehicle because Warwick had his seat reclined and was leaning back in the seat.

officers did not identify themselves as police officers and did not wear anything to indicate they were police officers.[3]

As he approached the vehicle, Officer Ferguson drew his handgun and pointed it at the ground with his finger off the trigger. Through the back window of the vehicle, Officer Ferguson saw that Warwick had a syringe in his right hand and that he was emptying the syringe's contents onto the floor. Robinson stated, however, that Warwick did not threaten any of the officers with the syringe and did not make any movements the officers at the scene would consider threatening.[4]

Officer Ferguson, now within one or two feet of Warwick, ordered Warwick to turn off the vehicle. Concerned that Warwick might use the syringe as a weapon to stab him, and unaware of the exact contents of the syringe, Officer Ferguson pointed his weapon at Warwick with his finger on the trigger. Warwick then put the vehicle in reverse and hit Officer Ferguson's pick-up truck. After the vehicle came to rest, Officer Ferguson, with the gun in his left

---

[3] Contrary to Robinson's account, Officer Ferguson stated that he and Officer Nelson wore their SWAT identification vests over their civilian clothes and that Officer Clowers shouted, "Police, get out of the car," as he exited his truck.

[4] To the contrary, Officer Ferguson stated that as he approached the vehicle, Warwick balled his fist, with the needle of the syringe extending out, as if he might use the syringe as a weapon.

hand, attempted to open the door to pull Warwick out of the vehicle. The gun then accidentally discharged, and the bullet struck Robinson in the leg.[5]

Officer Ferguson said he did not know as he approached the vehicle if Warwick was a drug dealer or if Warwick was armed. However, he stated he believed Warwick was threatening serious bodily harm to the officers because the syringe was a potential weapon and because Warwick refused to exit or turn off his vehicle. Officer Ferguson felt he needed to point his weapon at Warwick to shoot him, if necessary, to prevent being stabbed or struck by the vehicle if Warwick attempted to flee. Officer Ferguson also believed he would have placed himself and the other officers in more danger had he not approached Warwick's vehicle with his gun drawn. Officer Ferguson averred that, based on his training and experience, and in light of the threats posed, another reasonable officer could have believed it appropriate to point his weapon at Warwick with his finger on the trigger. Officer Ferguson stated that his actions complied with the Police Department's General Orders concerning the use of deadly force.

---

[5] Officer Ferguson said that he had already opened the vehicle door before Warwick put the vehicle in reverse and that as the vehicle moved backward, the open door struck him, causing his weapon to accidentally discharge.

**V.   Analysis**

In two issues, the City contends that there were no fact issues that precluded rendition of judgment on the City's plea to the jurisdiction and that it conclusively established Officer Ferguson's official immunity, thereby establishing the City's governmental immunity. Because the City's issues are related, we consider them together.

**A.   Governmental Immunity**

"When official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer from vicarious liability." *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000) (citing *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995)). Invoking this rule, the City argues Robinson's lawsuit is barred by governmental immunity because official immunity would protect Officer Ferguson had Robinson sued him individually.

Unless waived by the State, governmental immunity from suit defeats a trial court's subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 225. Relevant to this case, section 101.021(2) of the Tort Claims Act waives governmental immunity for personal injury caused by the use of tangible personal property, but only to the extent the governmental unit would be liable to the claimant under Texas law if it were a private person. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021(2), 101.025(a) (Vernon 2005). Conversely, the Tort Claims Act

8

does not waive governmental immunity if the governmental unit would not be liable to the claimant under Texas law if it were a private person. *Id.* §§ 101.021(2), 101.025(a). Thus, the Tort Claims Act creates a unique statutory scheme in which immunity from liability and immunity from suit are coextensive. *Miranda*, 133 S.W.3d at 224; *see also* Tex. Civ. Prac. & Rem. Code §§ 101.021(2), 101.025(a).

In this case, Robinson contends the City is vicariously liable for Officer Ferguson's conduct. If official immunity would shield Officer Ferguson from liability, the City cannot be vicariously liable for his acts, and the Tort Claims Act does not waive the City's governmental immunity. *Clark*, 38 S.W.3d at 580; *City of San Antonio v. Trevino*, 217 S.W.3d 591, 593, 596 (Tex. App.—San Antonio 2006, no pet.). Thus, we must determine whether official immunity would protect Officer Ferguson from liability had Robinson sued him individually.

**B.      Official Immunity for Injuries Sustained During an Arrest**

A governmental employee is entitled to official immunity for discretionary duties within the scope of the employee's authority that are performed in good faith. *Leachman v. Dretke*, 261 S.W.3d 297, 315 (Tex. App.—Fort Worth 2008, no pet.); *see also Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

9

"[O]fficial immunity is designed to protect public officials from being forced to defend their decisions that were reasonable when made, but upon which hindsight has cast a negative light" because "'the public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions.'" *Telthorster*, 92 S.W.3d at 463 (quoting *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994)). Because Robinson does not contest Officer Ferguson was performing a discretionary duty within the scope of his employment at the time his weapon accidentally discharged, we address only the good faith element of the official immunity test. *See Trevino*, 217 S.W.3d at 591.

In *Chambers*, the Supreme Court of Texas held that an officer establishes good faith in a police-pursuit case by showing a reasonably prudent officer could have believed it necessary to continue the pursuit, balancing the need for immediate police intervention against the risk of harm to the public. 883 S.W.2d at 656. The supreme court later extended this test to high-speed emergency responses and elaborated on the need and risk elements. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997). The court explained that the need element is determined by the seriousness of the emergency, the necessity of the officer's immediate response, and the alternate courses of action available, if any. *Id.* The risk aspect involves the potential harm the

officer's actions could cause, the likelihood of the potential harm, and the clarity of the risk of harm to a reasonably prudent officer. *Id.*

In *Telthorster*, the court specifically declined to apply the *Wadewitz* good-faith standard to an officer's conduct that causes injuries during an arrest "because the public-safety concerns underlying [the *Wadewitz*] assessment are not implicated" in an arrest-injury case. 92 S.W.3d at 459–60. Instead, the court held that an officer proves good faith in an arrest-injury case by showing "that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Id.* at 459. This does not require the officer to prove that all reasonably prudent officers would have engaged in the same conduct or that it would have been unreasonable to not engage in the conduct. *Id.* at 465. Instead, the officer "must prove only that a reasonably prudent officer, under similar circumstances, *might* have reached the same decision." *Id.* (emphasis in original). Once the officer meets this burden, the plaintiff must "do more than show that a reasonably prudent officer could have reached a different decision." *Id.* "Instead, [the plaintiff] must offer evidence that *no reasonable officer* in [the officer's] position could have believed that the facts were such that they justified his conduct." *Id.* (emphasis added).

11

## C.     Officer Ferguson's Good Faith Under *Telthorster*

The City, citing *Telthorster* and relying on Officer Ferguson's affidavit, argues it conclusively established Officer Ferguson's good faith conduct during the accidental shooting because a reasonably prudent officer could have believed it necessary to engage in the same conduct.[6]

Officer Ferguson stated in his affidavit that he was suspicious of Warwick's vehicle because it initially appeared empty and abandoned. He also stated that he saw Warwick mixing a narcotic in his vehicle, that Warwick had a syringe and was emptying its contents onto the floor, that he was concerned Warwick would use the syringe as a weapon, and that Warwick ignored multiple orders to turn off his vehicle. Officer Ferguson was within one to two

---

[6] The City does not cite, and we have not found, a case applying the *Telthorster* good-faith standard to a plea to the jurisdiction. However, other courts have applied the *Wadewitz* good-faith standard to pleas to the jurisdiction. *See Trevino*, 217 S.W.3d at 593, 596 (applying *Wadewitz* and reversing order denying city's plea to jurisdiction where city conclusively established officer's official immunity); *Harris County v. Smyly*, 130 S.W.3d 330, 333–34, 336 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (applying *Wadewitz* and affirming order denying county's plea to jurisdiction where county did not conclusively establish officer's official immunity). The *Wadewitz* good-faith standard addresses police emergencies while the *Telthorster* good-faith standard addresses injuries sustained during an arrest. *Telthorster*, 92 S.W.3d at 459. Because the *Wadewitz* good-faith standard and the *Telthorster* good-faith standard both consider what a reasonably prudent officer could have believed under similar circumstances, it follows that if courts apply the *Wadewitz* good-faith standard to pleas to the jurisdiction, courts should also apply the *Telthorster* good-faith standard to pleas to the jurisdiction. Thus, we apply the *Telthorster* good-faith standard to determine whether the City conclusively established Officer Ferguson's official immunity.

12

feet of Warwick and believed it necessary to point his weapon at Warwick during the encounter. Officer Ferguson said he believed Warwick was threatening serious bodily harm to himself and his fellow officers because the syringe was a potential weapon and because Warwick refused to exit or turn off his vehicle. Officer Ferguson further averred he would have placed himself and the other officers in more danger had he not approached Warwick's vehicle with his gun drawn. Finally, Officer Ferguson stated that, based on his training and experience, and in light of the threats posed, another reasonable officer could have believed it appropriate to point his weapon at Warwick with his finger on the trigger.

This evidence satisfied the City's burden under *Telthorster* to prove that a reasonably prudent officer, under similar circumstances, could have believed Officer Ferguson's conduct was justified. *Id.* at 460; *see also Hidalgo County v. Gonzalez*, 128 S.W.3d 788, 795–96 (Tex. App.—Corpus Christi 2004, no pet.) (holding that officer met *Telthorster* burden when he testified he believed force was necessary to ensure detainee's safety, he used only the amount of force necessary, and he used force only after detainee reacted aggressively). We must therefore determine if Robinson offered evidence sufficient to create genuine issues of material fact. *Telthorster*, 92 S.W.3d at 465.

13

**D.** **Robinson's Controverting Evidence Under *Telhorster***

Once the City met its burden of proof, Robinson was required to offer evidence that no reasonable officer in OfficerFerguson's position could have believed the facts justified his conduct. *Id.* To create a genuine issue of material fact, she was required to "do more than show that a reasonably prudent officer could have reached a different decision." *Id.*

Citing *Telthorster*, Robinson first contends a good faith analysis balances the officer's need to place himself in the situation against the risk of public harm by engaging in the conduct. However, the need/risk assessment does not apply to cases like this one involving injuries sustained during an arrest. *Id*. at 459. Robinson's reliance on the need/risk analysis is therefore misplaced. *Id.*

Without citation to authority, Robinson also contends the City cannot establish Officer Ferguson's good faith because Officer Ferguson violated the Fort Worth Police Department's General Orders. However, "an officer's good faith is not rebutted by evidence that he violated the law or department policy in making his response." *Johnson v. Campbell*, 142 S.W.3d 592, 596 (Tex. App.—Texarkana 2004, pet. denied); *see also Vazquez v. City of San Antonio*, No. 04-05-00707-CV, 2006 WL 1539636, at *4 (Tex. App.—San Antonio June 7, 2006, no pet.). "Nor does recklessness in the performance of the officer's duty belie his good faith. Recklessness is negligence, and negligence

14

is immaterial when determining if an officer acted in good faith." *Johnson*, 142 S.W.3d at 596. Thus, even assuming Officer Ferguson violated department policy, his alleged violation does not mean Officer Ferguson did not act in good faith. *Id.*

In her affidavit, Robinson does not deny that Warwick was mixing a narcotic in his vehicle, that Warwick had a syringe, that Warwick refused multiple orders to turn off the vehicle, or that Warwick attempted to escape by backing his vehicle into Officer Ferguson's truck. Robinson also does not contradict Officer Ferguson's statements that he believed Warwick was threatening serious bodily harm to the officers because the syringe was a potential weapon and that Warwick refused to exit or turn off his vehicle. She also does not contradict Officer Ferguson's statement that the officers would have been in more danger had Officer Ferguson not pointed his weapon at Warwick. Although there are factual differences between Robinson's and Officer Ferguson's affidavit testimony, the differences are not genuine issues of *material* fact because they do not suggest that no reasonable officer could have acted as Officer Ferguson acted. *See Telthorster*, 92 S.W.3d at 466–67 (holding plaintiff did not controvert good faith where evidence was conclusory and did not establish that no reasonable officer would have been concerned for his safety under the particular facts of the case). In short, Robinson did not

15

present evidence that "no reasonable officer under similar circumstances could have believed that the facts were such that they justified the disputed conduct." *Id.* at 465. We sustain the City's first and second issues.

## VI. Conclusion

Because we sustain both of the City's issues, we reverse the trial court's order denying the City's plea to the jurisdiction. We dismiss this cause for lack of subject-matter jurisdiction.

ANNE GARDNER
JUSTICE

PANEL: CAYCE, C.J.; GARDNER and MEIER, JJ.

DELIVERED: November 12, 2009

16