Opinion issued August 18, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00973-CV

———————————

Memorial Villages Police Department, Appellant

V.

Wesley
Gustafson, III, Eric Gustafson, and Susan Wadlington, as adult children &
heirs of the Estate of Wesley Gustafson, Jr., Appellees



 



 

On Appeal from the 127th District Court

Harris County, Texas



Trial Court Case No. 2010-09792

 



 

MEMORANDUM OPINION

          Appellant Memorial Villages Police
Department challenges the trial court’s order denying its plea to the
jurisdiction in favor of appellees, Wesley Gustafson, III, Eric Gustafson,
and Susan Wadlington.  The Gustafsons
filed a wrongful death and survival action against MVPD after their father,
Wesley Gustafson, Jr., sustained fatal injuries in a collision involving a
vehicle pursued by Officer W. R. Woodall. 
In one issue, MVPD argues that the trial court erred in denying its plea
to the jurisdiction.  Because we conclude
that Officer Woodall was entitled to official immunity for his actions, and for
that reason MVPD was entitled to assert governmental immunity, we reverse and
render a judgment of dismissal.

Background

          On
the morning of July 28, 2008, after several burglaries were reported in the
Memorial Villages area, MVPD officers were instructed to be on the lookout for
a dark blue sport utility vehicle with a temporary dealer’s license plate.  While driving on Piney Point Road, Woodall heard
a radio message in which a fellow officer stated that he had spotted the
suspect vehicle in the area.  The officer
informed Woodall that the suspect vehicle had evaded him and was likely traveling
on Piney Point Road.  Woodall passed a
vehicle traveling in the opposite direction and matching the description of the
one used in the burglaries.  He turned
around to follow the suspect vehicle, and the driver, who was later identified
as Danny Shipp, turned sharply onto a side street.  Woodall reported his position and waited on
the corner of Piney Point Road and Williamsburg Drive for the suspect vehicle
to reemerge.  After less than a minute,
Shipp, driving the suspect vehicle, pulled out of the driveway, sped past
Woodall, ran a stop sign, and turned onto Piney Point Road.  Woodall activated his emergency flashing
lights and siren and pursued Shipp. 
During the chase, which lasted approximately four minutes, Shipp
exceeded the speed limit, drove on the wrong side of the road, ran several red
lights, and collided with several vehicles stopped at an intersection.  The chase ended when Shipp’s vehicle collided
with the car driven by Wesley Gustafson, Jr., who later died as a result of his
injuries.

          Gustafson’s
children, as heirs of his estate, sued MVPD for wrongful death under section
101.021 of the Texas Tort Claims Act, which waives governmental immunity from
suit in certain circumstances.  See Tex.
Civ. Prac. & Rem. Code § 101.021 (West
2011).  MVPD filed a plea to the
jurisdiction, asserting immunity from the claim.  The Gustafsons filed an amended petition and
a response.  After a hearing, the trial
court denied the plea to the jurisdiction, and MVPD appealed.  MVPD argues that the trial court erred in
denying the plea because it
established as a matter of law that Woodall was entitled to official immunity
and that its governmental immunity had not been waived.  MVPD further contends that the emergency
situation exception found in section 101.055(2) of the Civil Practice and
Remedies Code applies, and that the Gustafsons’ claims do not involve the “use”
of a motor-vehicle.

Analysis

I.                 
Standard of review

An appeal may be taken
from an interlocutory order granting or denying a plea to the jurisdiction
filed by a governmental unit.  Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(8), 101.001(3)(D)
(West 2008 & 2011).  We
review the trial court’s ruling on a plea to the jurisdiction de novo.  State v. Holland,
221 S.W.3d 639, 642 (Tex. 2007); Tex. Dep’t of Parks & Wildlife v.
Miranda,
133 S.W.3d 217, 226 (Tex. 2004).  The plaintiff must allege facts that
affirmatively establish the trial court’s subject matter jurisdiction.  See Tex. Ass’n of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 446
(Tex. 1993); City of Pasadena v. Kuhn,
260 S.W.3d 93, 95 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  In determining whether this burden has been
satisfied, we must construe the pleadings liberally in the claimants’ favor and
deny the plea if the claimant has alleged facts affirmatively demonstrating
jurisdiction to hear the case.  Miranda, 133 S.W.3d at 226–27; Smith v. Galveston Cnty., 326 S.W.3d
695, 698 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

If the plea to the jurisdiction challenges the existence of
jurisdictional facts, the trial court must consider relevant evidence submitted
by the parties.  Miranda, 133 S.W.3d at 227.  When the relevant evidence is undisputed or
fails to raise a fact question on the jurisdictional issue, the trial court
rules on the plea to the jurisdiction as a matter of law.  Id. at 228.  If, however, the evidence creates a fact
question regarding jurisdiction, then the trial court must deny the plea, and
the fact issue will be resolved by the fact-finder.  Id
at 227–28.  In reviewing the evidence presented, we take
as true all evidence favorable to the plaintiff, indulging every reasonable
inference in the plaintiff’s favor.  Id. at 228.

Because
MVPD challenged the existence of jurisdictional facts, we must consider the
relevant evidence submitted by the parties and determine whether the Gustafsons
raised a question of fact as to the applicability of
governmental immunity under section 101.021 of the Texas Tort Claims Act.  Tex.
Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011); see,
e.g., Univ.
of Houston v. Clark, 38 S.W.3d 578, 579 (Tex. 2000); Junemann v. Harris Cnty., 84 S.W.3d 689, 694–95
(Tex. App.—Houston [1st Dist.] 2002, pet. denied).

II.              
Governmental immunity

Under the doctrine of governmental immunity, political
subdivisions of the State, including municipalities, cannot be held liable for
the actions of their employees unless a constitutional provision or statute
waives such immunity.  See, e.g., City of Houston v. Williams, No. 09-0770, 2011 WL 923980, at *3
(Tex. Mar. 18, 2011); City of
Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994).  The Texas Tort Claims Act waives governmental
immunity in certain limited circumstances. 
See Dallas
Cnty. Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 342–43 (Tex.
1998).  Section 101.021 of the Act
provides:

A
governmental unit in the state is liable for:

 

(1)            
property damage,
personal injury, and death proximately caused by the wrongful act or omission
or the negligence of an employee acting within his scope of employment if:

 

(A)          
the property damage,
personal injury, or death arises from the operation or use of a motor-driven
vehicle or motor-driven equipment; and 

 

(B)           
the employee would be
personally liable to the claimant according to Texas Law; and

 

(2)            
personal injury and
death so caused by a condition or use of tangible personal or real property if
the governmental unit would, were it a private person, be liable to the
claimant according to Texas law.

 

Tex. Civ. Prac. & Rem. Code Ann. § 101.021.  The Act also provides for exceptions to the waiver of
immunity.  See id. §§ 101.051–.067 (West 2011).  

Because the Act provides that a governmental unit may only
be liable when “the [negligent] employee would be personally liable to the
claimant,” id. § 101.021(1)(B), whether the
employee is entitled to official immunity may also affect whether the Act’s
limited waiver of governmental immunity applies.  See
DeWitt v. Harris Cnty., 904 S.W.2d 650, 653 (Tex. 1995).  “If the employee is protected from liability
by official immunity, the employee is not personally liable to the claimant and
the government retains its sovereign immunity under subsection 1.”  Id.
at 653 (citing K.D.F. v. Rex, 878
S.W.2d 589, 597 (Tex. 1994), and City of
Houston v. Kilburn, 849 S.W.2d 810, 812 (Tex. 1993)).  “A governmental employee is entitled to
official immunity: (1) for the performance of discretionary duties;
(2) within the scope of the employee’s authority; (3) provided the
employee acts in good faith.”  Clark, 38 S.W.3d at 580.

Because the parties agree that Woodall was performing a
discretionary duty within the scope of his authority as a police officer, the
question we must determine is whether the Gustafsons, in responding to the plea
to the jurisdiction, raised a fact issue on the element of good faith.  See
Miranda, 133 S.W.3d at 227–28 (“[W]hen the facts underlying the merits and
subject matter jurisdiction are intertwined, [the plaintiff must] show that
there is a disputed material fact regarding the jurisdictional issue.”).  In order to establish good faith as a matter
of law, and to therefore be entitled to an official immunity defense, a police
officer must prove that a reasonably prudent officer, under the same or similar
circumstances, could have believed that the need to immediately apprehend the
suspect outweighed a clear risk of harm to the public in continuing the
pursuit.  Clark, 38 S.W.3d at 581; Junemann,
84 S.W.3d at 693–94.  The evidence is not
required to establish that it would have been unreasonable to stop the pursuit
or that all reasonably prudent officers would have continued the pursuit.  Clark,
38 S.W.3d at 581.  But it must
demonstrate that a reasonably prudent officer might have believed that it was
prudent to continue the pursuit.  Id. 


To conclusively prove good faith in the police-pursuit
context, an officer must substantiate his determination with facts showing that
he sufficiently assessed both the need and risks of the pursuit.  Id.  “Need” refers to the urgency of the
circumstances requiring the emergency response and requires the officer to
assess the need to apprehend the suspect immediately.  Id.
at 581–82, 584–85.  The need aspect is
measured by factors such as the seriousness of the emergency to which the
public official is responding, whether the official’s immediate presence is
necessary to prevent injury or loss of life, and what alternative courses of
action, if any, are available to achieve a comparable result.  Wadewitz
v. Montgomery, 951 S.W.2d 464, 467 (Tex. 1997).  The “risk” aspect refers to the
countervailing public safety concerns, including the nature and severity of
harm his actions could cause, including possible injuries to bystanders, the
likelihood that any harm would occur, and whether any risk of harm would be
clear to a reasonably prudent official.  Id. 
To controvert proof of good faith, it is not enough for the nonmovant to
show that a reasonably prudent officer could have decided to discontinue or to
not initiate the pursuit.  Clark, 38 S.W.3d at 581.  The nonmovant must show that no reasonable
person in the officer’s position could have thought that the facts justified
the officer’s actions.  Id.; City
of Lancaster v. Chambers, 883 S.W.2d 650, 657 (Tex. 1994).

A.              
MVPD’s evidence of good faith

In support of its plea to the jurisdiction, MVPD attached
Woodall’s affidavit, a photograph of the suspect vehicle taken by a security
camera, a copy of the incident report describing the police chase and
collision, a video recording of the pursuit taken from the video recorder mounted
in Woodall’s patrol vehicle, and a street map of the area of the pursuit.  

In his affidavit, Woodall averred that on the morning of
July 28, 2008, the on-duty officers were instructed to be on the lookout for a
dark blue sport utility vehicle with paper plates used in the commission of
several burglaries.  Woodall was provided
with a photograph of the vehicle, but because of the poor resolution of the
image, he was unable to decipher any indentifying information.  He averred that neither the vehicle nor the
burglary suspect had been identified.  While on
patrol, Woodall received a radio transmission in which a fellow officer stated
that he had spotted the suspect vehicle in the area.  The officer informed Woodall that the suspect
vehicle had evaded him and was likely traveling on Piney Point Road.  Soon thereafter, Woodall saw a dark blue sport utility
vehicle, which matched the description of the suspect vehicle, driving south on
Piney Point Road.  Woodall, who was
driving north, turned his vehicle around to follow the suspect vehicle.  He saw Shipp, who was still unidentified,
turn onto a side-street and park in a circular driveway.  Woodall stated that “the combination of the
driver and vehicle meeting the physical description of the burglary suspect and
the driver’s behavior in [his] presence” caused him to believe that “[Shipp]
was the burglar [the MVPD] was looking for.” 
Within 30 seconds of turning onto the side street, Shipp left the
driveway, speeding past Woodall and running a stop sign.  Woodall averred that he immediately activated
his emergency lights and siren and began his pursuit of Shipp.  

Woodall stated that in deciding whether to initiate and
continue his pursuit of Shipp, he considered both the need to pursue the
suspect in terms of the severity and dangerousness of the suspected crimes and
the risk to the public of allowing an unidentified burglar to evade
identification and apprehension.  In
addition to failing to stop at a stop sign, Shipp disregarded Woodall’s lights
and siren.  At the time Shipp’s identity was
not known, he was a suspect in three burglaries, and he was believed to be a
relatively sophisticated criminal likely to continue burglarizing homes in the
area.  Woodall averred that a reasonably
prudent officer in the same or similar circumstances would have believed, as he
did, that the need to immediately apprehend Shipp outweighed the risk to the
public in continuing the pursuit.

In his affidavit, Woodall stated that in initiating and
continuing the pursuit he considered whether his immediate presence was
necessary to apprehend Shipp, as well as the alternative courses of action
available to him.  Because Shipp was
unidentified and driving a vehicle with no decipherable identifying markers,
Woodall believed that his presence was necessary and that discontinuing the
pursuit was not a viable alternative.  Woodall
radioed for back-up and for helicopter surveillance, but the other officers did
not arrive on the scene until after the accident had occurred.  Woodall stated that he “could not have
identified [Shipp] based on anything visible on the paper tags.”  He believed “there was no option of
attempting to drive close enough to read the tags and then arrange for an arrest
of the suspect at a later time and place.”

Woodall also assessed the risks involved in the
pursuit.  The chase took place during the
mid-morning, after rush hour.  He stated
that the road conditions were dry, visibility was excellent, the volume of
vehicular traffic was “low,” and “pedestrian traffic appeared
non-existent.”  Woodall further averred:

From the beginning of the pursuit to
the end, my siren and overhead flashing emergency lights were activated. . .
.  The pursuit took place on major road
arteries.  The last 15 seconds occurred
on the 9500 block of Richmond Avenue, a straight, six-lane avenue through a
commercial area.  When it became apparent
to me that Shipp would accelerate as I closed the distance between my vehicle and
his, I dropped back to give him more room. 
By increasing my following distance, I also attempted to reduce the risk
of him becoming distracted by me.  I
never attempted to pass him in order to block his flight, and I did not
tailgate him. . . .  [W]hen [Shipp]
reached the intersection of Westheimer and Westerland and encountered other
vehicles partially blocking his path, he slowed and nudged the other cars out
of the way; he did not smash into them at high speed.  The accident occurred when Mr. Gustafson
unexpectedly failed to yield the right-of-way by driving from a parking lot
into the lane of traffic in which Shipp was driving.

 

At
the time of the collision, Woodall’s vehicle was more than a full city block
behind Shipp.  In total, the chase lasted
less than four minutes.

          Woodall substantiated the statements
in his affidavit with facts showing that he assessed both the need to apprehend
the suspect and the risk of harm to the public when he initiated pursuit of
Shipp and when he chose to continue his pursuit.  See
Clark, 38 S.W.3d at 581.  Woodall
addressed the need to stop Shipp based on the seriousness of the situation as a
whole; he stated how Shipp, who was unidentified at the time, was a suspect in
a string of burglaries and was attempting to evade identification and arrest;
and he discussed his evaluation of the risks to the public.  See id.  He also stated that conditions were good and
traffic was light.  Based on his
evaluation of the needs and risks, Woodall believed that the need to initiate
and continue his pursuit of Shipp outweighed the risk of harm to the
public.  See id. at 586.

B.              
The Gustafsons’ evidence disputing good
faith

The Gustafsons argue that the MVPD did not conclusively
establish the elements of good faith and that the evidence attached to their
response raised a question of fact as to Woodall’s good faith.  The Gustafsons submitted the following
exhibits to controvert MVPD’s evidence: the plaintiffs’ first amended petition;
MVPD’s responses to requests for disclosure, admissions, and interrogatories;
photos of the accident; incident reports; Memorial Villages’ written policy on
police-pursuit driving; photos of the area of the chase; a transcript of
Woodall’s testimony at Shipp’s criminal trial; and the affidavit of proposed expert
witness James L. Greenstone. 

In his affidavit, Greenstone opined that “[a] reasonably
prudent officer, when confronted with the facts [in this case], would or should
have known that the apprehension of [] Shipp did not outweigh the risk of harm
to the general public.”  The Gustafsons
produced evidence to show that Woodall pursued Shipp, who was driving at a high
rate of speed, through a residential neighborhood.  During the pursuit, Woodall chased Shipp out
of MVPD’s jurisdiction, drove in the wrong lane, and entered an intersection
where cars were waiting at a red light. 
The Gustafsons and Greenstone contend that Woodall, in initiating and in
continuing the pursuit, violated MVPD polices when he pursued Shipp for
committing a minor traffic violation. 
The Gustafsons also argue that Woodall acted “with reckless disregard or
conscious indifference to the safety of persons in the area, including Wesley
Gustafson.”  Although MVPD’s driving
policies provide that a pursuit should not be initiated for a non-hazardous
misdemeanor, and although Woodall’s affidavit did not rely solely on Shipp’s
traffic violation as justification for initiating a pursuit, an officer’s good
faith is not rebutted by evidence that he violated the law or department policy
in making his response.  See Campbell v. Jones, 264 S.W.2d 425,
427 (Tex. 1954); Johnson v. Campbell,
142 S.W.3d 592, 596 (Tex. App.—Texarkana 2004, pet. denied).  Moreover, evidence of recklessness is
immaterial when determining if an officer acted in good faith.  City of
Fort Worth v. Robinson, 300 S.W.3d 892, 900 (Tex. App.—Fort Worth 2009, no
pet.) (citing Johnson, 142 S.W.3d at
596).

Greenstone also stated that “there was no immediate incident
which necessitated the pursuit.”  He
further opined that “there was an alternative course for Officer Woodall in
order to investigate this situation and to do it in a safe manner while accomplishing
his function as a police officer.” 
Greenstone pointed to the fact that Woodall waited on the corner of
Piney Point Road and Williamsburg Drive for Shipp to reemerge, and he argued
that a reasonably prudent officer would have blocked Shipp in and prevented his
exit from the circular driveway.  He
contends that Woodall’s “failure to block-in” Shipp’s vehicle created a
likelihood of harm to bystanders and that “blocking the roadway would have
prevented possible harm to bystanders and been a reasonable way of confronting”
Shipp.  But the facts and circumstances
known to Woodall at the time he initiated his pursuit were that Shipp was a
suspect in a string of house burglaries; he had not been identified; he had
recently evaded another officer; he had demonstrated a degree of sophistication
in his crimes; he was presumably casing the neighborhood; and he was driving a
vehicle with paper plates, which made identification through means other than
arrest impossible.  

We judge an officer’s good faith on the basis of what he
perceived to be the facts at the time of his response.  Johnson,
142 S.W.3d at 596; see also Harris Cnty.
v. Ochoa, 881 S.W.2d 884, 888–89 (Tex. App.—Houston [14th Dist.] 1994, writ
denied).  Evidence to controvert good
faith must do more than merely show that a reasonably prudent officer could
have reached a different decision.  See Chambers, 883 S.W.2d at 657; Telthorster v. Tennell, 92 S.W.3d 457,
465 (Tex. 2002).  To controvert MVPD’s
evidence of good faith, the Gustafsons were required to show that no reasonably
prudent officer could have thought that the facts justified Woodall’s
actions.  See Clark, 38 S.W.3d 581.  An officer is not required to consider every
conceivable alternative course of conduct. 
See id. at 584.  Woodall’s affidavit establishes that he
considered alternative courses of action, including allowing Shipp to escape,
and that the facts, as known to him, demonstrated a need to immediately
apprehend Shipp.  Although Greenstone’s
affidavit suggests a possible alternative course of action, it is insufficient
to controvert MVPD’s evidence of good faith. 
See id. at 581. 


Greenstone’s affidavit and the other evidence proffered by
the Gustafsons is insufficient to raise a fact question on the issue of whether
Woodall acted in good faith in initiating and continuing his pursuit of
Shipp.  See id. at 587.  Indulging
every reasonable inference in favor of the Gustafsons, we conclude that their
evidence is insufficient to controvert MVPD’s proof on the element of good
faith.  See Miranda, 227–28.  Accordingly we hold that the trial court
erred in denying the plea to the jurisdiction, and we sustain MVPD’s sole
issue.  Because we hold that the
trial court erred in denying MVPD’s plea to the jurisdiction on this basis, we
need not address MVPD’s other arguments about the applicability of exceptions
under the Texas Tort Claims Act. 

Conclusion

          We
reverse the order denying MVPD’s plea to the jurisdiction, and we render
judgment dismissing the Gustafsons’ claims against MVPD for want of
jurisdiction.

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Jennings, Bland, and Massengale.