# Supreme Court of Texas

No. 23-0094

City of Houston,

*Petitioner*,

v.

Ruben Rodriguez and Frederick Okon,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

JUSTICE BUSBY, joined by Justice Lehrmann and Justice Devine, concurring.

The Court's opinion, which I join, should not be construed as sanctioning the decision to initiate a high-speed chase in these or similar circumstances. That decision is distinct from "a reassessment of whether to continue pursuit in response to changing circumstances during the pursuit." *Univ. of Houston v. Clark*, 38 S.W.3d 578, 583 (Tex. 2000). The parties here focus solely on whether Officer Corral's decision to make a wide turn in pursuit of the unidentified suspect was a reasonable reassessment; the plaintiffs have not alleged or argued that initiating pursuit was negligent or improper. The Court's holding is

therefore limited to concluding that a reasonably prudent officer could have believed that the need to make such a turn outweighed the risks in light of the changing circumstances during the pursuit. *Ante* at 15-16, 19.

I write separately to make a few additional observations. ***First***, as the Court discusses, the good-faith element of the official-immunity defense requires proof that "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994). The standard "is one of objective legal reasonableness" rather than "subjective good faith." *Id.*

Some courts of appeals have concluded from a footnote in *City of Lancaster* that an officer's recklessness is immaterial to a determination of good faith,[1] but that is incorrect. Instead, as we later explained, the point of our footnote was that "[e]vidence of *negligence alone* will not controvert competent evidence of good faith." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n.1 (Tex. 1997) (emphasis added). But as the footnote also recognized, evidence of the officer's reckless disregard for the safety of others—such as that required to avoid the emergency

---

[1] *See, e.g., City of Houston v. Gomez*, 693 S.W.3d 523, 532 (Tex. App.—Houston [14th Dist.] 2023, pet. filed); *Mem'l Vills. Police Dep't v. Gustafson*, No. 01-10-00973-CV, 2011 WL 3612309, at *6 (Tex. App.—Houston [1st Dist.] Aug. 18, 2011, no pet.); *City of Fort Worth v. Robinson*, 300 S.W.3d 892, 899-900 (Tex. App.—Fort Worth 2009, no pet.); *Johnson v. Campbell*, 142 S.W.3d 592, 596 (Tex. App.—Texarkana 2004, pet. denied).

exception to the Tort Claims Act's waiver of immunity[2]—may "inferentially rebut the defense of official immunity." *City of Lancaster*, 883 S.W.2d at 656 n.5.

***Second***, in conducting the need–risk analysis, courts should be mindful that a decision to *initiate* pursuit may meet the good-faith standard for official immunity even though a later *reassessment* does not, and vice versa.[3] Crucially, the inquiry focuses on the information the officer possessed at the time of the challenged conduct.[4] That focus protects officers from having their performance second-guessed based "on the facts as they appear through the clarity of hindsight."[5] But the focus cuts both ways. Hindsight and changing circumstances during the

---

[2] *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2). To avoid the exception, a plaintiff must show that "the operator has committed an act that the operator knew or should have known posed a high degree of risk of serious injury." *City of Amarillo v. Martin*, 971 S.W.3d 426, 430 (Tex. 1998); *see also City of San Antonio v. Maspero*, 640 S.W.3d 523, 531 (Tex. 2022).

[3] *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 584 (Tex. 2000) (providing example of officer entering blind or busy intersection and noting that "a reassessment of need versus risk" is required even if initial decision to pursue is justified); *Travis v. City of Mesquite*, 830 S.W.2d 94, 99 (Tex. 1992) (plurality opinion) (noting that "[t]he decision to initiate or continue pursuit may be negligent").

[4] *See, e.g.*, *Telthorster v. Tennell*, 92 S.W.3d 457, 466 (Tex. 2002) (holding officer acted in good faith when his drawn gun inadvertently discharged and injured suspect and noting that the court of appeals' "focus on the fact that [the suspect] turned out to be unarmed and thus presented no risk of harm" was "unduly informed by hindsight").

[5] *Id.* at 463; *see City of Houston v. Sauls*, 690 S.W.3d 60, 69 (Tex. 2024) ("Official immunity shields government employees from liability in civil lawsuits that, with the benefit of hindsight, would second-guess their performance of discretionary duties and force them to defend decisions that were reasonable when made.").

pursuit may not be used to immunize a contested decision to initiate pursuit in the first instance.

For example, when Officer Corral and his partner arrived at the parking lot to make an arrest for solicitation of prostitution, they gathered identifying information: the car's color, make, model, and license plate number, and the suspect's identity as a black male. But dispatch had not yet informed them that the vehicle had been reported stolen. From the "lens of the officer's perceptions" at this juncture,[6] alternative courses of action were available to track and later apprehend the suspect through vehicle records and the identifying information.

Yet Corral stated that he made a "split-second decision" to pursue the suspect fleeing "out of the parking lot . . . at a high rate of speed."[7]

---

[6] *Sauls*, 690 S.W.3d at 74 (quoting *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994)).

[7] Perhaps because plaintiffs never contested the propriety of initiating pursuit, Corral provided minimal justification for this initial decision:

> We traveled to the restaurant parking lot where the suspect was going to wait for the undercover detective. We observed a suspect to be a black male, located at the parking lot south of 9500 block of Ponderal Ln in a red Mercedes C30. Officers were informed by vice undercover officers that the suspect attempted to pick up a female vice undercover officer for sex for money. My partner and I were attempting to conduct a traffic stop for prostitution arrest. As we approached the suspect, he began to leave the parking lot, which required immediate response on our part. In a split-second decision, Officer Goodman and I decided to pursue the suspect, and activated emergency lights and siren. The suspect did not stop and instead fled out of the parking lot onto Ponderosa Ln. then heading southbound on the HWY 59 south service road at a high rate of speed. Officer Goodman relayed the information over the air and informed dispatch of our vehicle pursuit and gave the license plate for the red Mercedes.

The City did not produce its department's motor-vehicle pursuit policy, and Corral neither discussed the policy nor averred that his decision was consistent with it. Nor could the officers justify the decision by relying on hindsight that the suspect had committed felony motor-vehicle theft, as they later learned. Instead, they initiated a high-speed chase to pursue a suspect evading arrest for paying $40 to solicit sexual activity from another adult—a Class B misdemeanor offense at the time of the conduct in 2017.[8]

Had plaintiffs challenged Officer Corral's decision to initiate a high-speed chase, it may well be that the City could have offered further evidence supporting that decision. But on the present record, the "need" factors—the seriousness of the suspected crime, the necessity of the officer's immediate presence to apprehend a suspect, and the availability of any alternative courses of action to achieve a comparable result[9]—

---

[8] Since that time, the Legislature has made the offense of solicitation of prostitution a state jail felony. *See* Act of May 28, 2021, 87th Leg., R.S., ch. 807, § 29, sec. 43.021(a), (b), 2021 Tex. Gen. Laws 1929, 1939 (codified as amended at TEX. PENAL CODE § 43.02). Officer Corral did not identify any indication of human trafficking or involvement of minors, which would significantly elevate the seriousness of the suspected crime. *See* TEX. PENAL CODE § 12.03 (describing classification of misdemeanors into three categories according to the relative seriousness of the offenses).

[9] *See Sauls*, 690 S.W.3d at 73 (quoting *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997)). As the U.S. Court of Appeals for the Tenth Circuit has noted:

> The public interest being served by the officer's pursuit or response may vary with the severity of the suspected crime. Thus, there may be more justification for a high-speed pursuit to apprehend a suspected murderer/terrorist/armed bank robber, or a suspected drunk driver, or to respond to a domestic

suggest that Corral's need to *initiate* pursuit was minimal when weighed against the inherent risks.

High-speed chases inevitably involve obvious, significant, and often fatal risks: to the public at large, to other drivers, to innocent bystanders or passengers, to the fleeing suspect, and to the pursuing officers.[10] "On average, crashes occur in at least 30 percent of vehicle pursuits, and injuries or fatalities occur in 5 to 17 percent of pursuits."[11]

Incurring those risks may be reasonable and justifiable to stop fleeing suspects who pose a danger to our communities.[12] But unless

---

disturbance call, than, say, to apprehend someone who has committed a minor traffic violation or non-violent misdemeanor.

*Green v. Post*, 574 F.3d 1294, 1310 n.15 (10th Cir. 2009).

[10] *See City of San Antonio v. Maspero*, 640 S.W.3d 523, 531 (Tex. 2022) ("[*A*]*ll* high-speed car chases involve obvious risk of serious injury to bystanders."); *Telthorster*, 92 S.W.3d at 463 n.1 (identifying concerns about the risks to the general public and bystanders that high-speed pursuits present). These risks include not only "that the suspect will injure a third party" but also "that *the officer himself* will injure a third party," as occurred here. *Clark*, 38 S.W.3d at 583.

[11] Police Executive Research Forum, *Vehicular Pursuits: A Guide for Law Enforcement Executives on Managing the Associated Risks* (2023); *see, e.g.*, *Maspero*, 640 S.W.3d at 531 (describing an expert report in the record as concluding that "41% of urban police pursuits will end in an accident" and "33–34% of police fatalities will be innocent bystanders"); *Telthorster*, 92 S.W.3d at 464 n.1 (collecting articles and noting that "commentators have expressed concern about the risks to the general public that high-speed pursuits present," including "that high-speed pursuits cause hundreds of deaths each year"); *Travis*, 830 S.W.2d at 99 n.4 (citing national data that "one pursuit in five leads to a traffic fatality (and) in only one percent of the cases was someone in the car wanted for violent crimes" (quoting *Travis v. City of Mesquite*, 764 S.W.2d 576, 579 (Tex. App.—Dallas 1989) (Thomas, J., dissenting))).

[12] The public good is also promoted when police officers "show that flight from the law is no way to freedom." *Sacramento v. Lewis*, 523 U.S. 833, 853

6

there is an accompanying reasonable suspicion of potential harm or danger, violent behavior, or other criminal activity, the need to apprehend a suspected nonviolent misdemeanant is unlikely to support official immunity for initiating an urban high-speed pursuit with all the risks such a pursuit entails, especially when information is at hand to later apprehend and identify the suspect. For most nonviolent misdemeanors, a high-speed pursuit should not become the default response to apprehend suspects attempting to evade arrest.

_____

J. Brett Busby
Justice

**OPINION FILED:** December 31, 2024

---

(1998). On the other hand, the law already disincentivizes a suspected misdemeanant from fleeing in a vehicle by making such flight a state jail felony. TEX. PENAL CODE § 38.04(a), (b)(1). And "[t]hose suspected of minor offenses may flee for innocuous reasons and in non-threatening ways." *Lange v. California*, 594 U.S. 295, 307 (2021) (collecting examples).

7