CITY OF DENTON, Appellant,

v.

MUNICIPAL ADMINISTRATIVE SERVICES, INC., Appellee.

No. 2–00–313–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 27, 2001.

Rehearing Overruled Nov. 1, 2001.

Wolfe, Clark, Henderson & Tidwell, L.L.P. and Ron Clark, Sherman, for Appellant.

Goldstein & Healey, L.L.P. and David J. Healey, Houston, for Appellee.

Panel A: CAYCE, C.J., LIVINGSTON and WALKER, JJ.

## OPINION

LIVINGSTON, Justice.

The City of Denton (Denton) appeals from a verdict in favor of Municipal Administrative Services, Inc. (MAS) on its suit to recover fees for services rendered in connection with an auditing and consulting agreement with Denton. We reverse.

## Background

Denton hired MAS to review General Telephone Company's (GTE) payments to Denton under their franchise agreement. In particular, Denton wanted MAS to review GTE's calculation of its categories of revenue for various telephone charges that were due Denton for tax years 1984, 1985, and 1986. Denton and MAS entered into a letter agreement on August 18, 1987 in which MAS agreed to audit franchise fees or other amounts "now due and owing [Denton]." MAS presented its audit summary to Denton on January 13, 1988. In May of 1988, Denton made demand on GTE for $158,048 and any other amounts found to be due for recovery of underpayments for each of the three tax years based on MAS's audit. After some negotiations with GTE, GTE and Denton settled

for $220,479, which GTE paid to Denton on July 19, 1988. GTE paid $164,587 for tax years 1984, 1985, and 1986 and $55,892 for tax year 1987. Denton then paid MAS its fifty percent fee in the amount of approximately $82,000 in September 1988.

In 1994 Denton retained another auditing firm to review underpayments after 1987 by GTE. Despite further negotiations with GTE, in 1995 GTE sued Denton for a declaratory judgment of its obligations under their franchise agreement and Denton countersued GTE for more underpayments for tax years 1988 through 1994. Denton ultimately recovered $976,388.76 from GTE in 1996 for those years. In 1999 MAS sued Denton to recover additional fees from the 1984 through 1986 period of time. MAS asserted it was not trying to seek fifty percent of Denton's recoveries for later years, but was trying to recover its damages for the "value of other compensation given to and accepted by" Denton under their contract. Its claim was based on the value of the new franchise agreements Denton was able to negotiate, although on future years. MAS sued for the additional fees under the theory of express contract, which was submitted to the jury. It also sued under theories of implied contract and quantum meruit. The trial court withdrew these two theories from the jury's determination. MAS asks us to consider those theories and to order a remand for submission of evidence on those theories if we hold against it on the express contract.

Denton filed a motion for partial summary judgment claiming the contract was void because it did not comply with the Texas Professional Services Procurement Act (PSPA), which requires any governmental entity to follow its procedures in soliciting and entering professional ser-

vices contracts.[1] Denton's motion was denied. Pretrial, Denton again presented its argument that the contract was void due to violation of the PSPA, however, the trial court withheld its ruling on that issue.

The case was tried to a jury that returned a verdict in favor of MAS for $251,232 on its express contract claim. Post-jury verdict, the trial court held a hearing on Denton's motion on the PSPA issue, received evidence, and heard arguments of counsel, but held against Denton. Denton also moved for judgment notwithstanding the verdict on the PSPA issue, but the trial court denied that motion too. The trial court entered final judgment on MAS's behalf and entered findings of fact and conclusions of law in support of its determination on the inapplicability of the PSPA and the lack of voidness of the contract between the parties.

Denton filed a limited appeal requesting only a partial record and giving notice of its intent to limit the appeal to a challenge of the trial court's determination of the voidness of the contract under the PSPA by setting forth such limitation in its notice of appeal. MAS, however, requested a complete clerk's and reporter's record so that the entire record is before us for consideration. *See* TEX.R.APP. P. 34.6(c).

### Issues Presented

Denton divides its seven issues into two general categories. First, Denton claims that because the type of services to be provided by MAS were governed by the PSPA and the PSPA prohibits contingency

fee arrangements and unreasonable fees, the Denton–MAS contract is void. MAS argues the PSPA does not apply to its contract with Denton, but concedes that if the PSPA applies, it, coupled with the accountancy rules of professional conduct, forbade contingency fee contracts, like the one involved here.

Second, and in the alternative, Denton challenges the legal and factual sufficiency of the evidence to support the trial court's findings of fact and conclusions of law as to whether the types of services to be provided were within the definition of the "practice of accountancy" within the meaning of the PSPA. Because Denton's appeal focuses on the applicability of the PSPA and its applicability may be determinative of this appeal, we address that issue first.

### Applicability of the Professional Services Procurement Act (PSPA)

The first issue requires us to review the trial court's conclusion that Denton's contract with MAS to conduct a franchise compliance audit did not fall under the PSPA. The PSPA regulates how municipalities are to contract for various types of professional services.[2]

The PSPA applies to licensed professional services that are

within the scope of the practice of accounting, architecture, optometry, medicine or professional engineering ... or those [professional services] performed by any licensed architect, optometrist,

1. *See* Act of March 24, 1971, 62d Leg., R.S., ch. 38, 1971 Tex. Gen Laws 72, *repealed by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 986 (current version at TEX. GOV'T CODE ANN. § 2254.001–.005 (Vernon 2000)).

2. PSPA's predecessor, as it existed in 1987 prior to its current codification, contained no

substantive changes applicable here. For purposes of this opinion, we will refer to the predecessor as PSPA also. *See* Act of March 24, 1971, 62d Leg., R.S., ch. 38, 1971 Tex. Gen Laws 72, *repealed by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 986 (current version at TEX. GOV'T CODE ANN. § 2254.001–.005).

physician, surgeon, certified public accountant or professional engineer in connection with his professional employment or practice.

Act of March 24, 1971, 62d Leg., R.S., ch. 38, 1971 Tex. Gen Laws 72, *repealed by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 986 (current version at TEX. GOV'T CODE ANN. § 2254.002). MAS contends this enumeration is a finite list and that "franchise auditing," the services provided to Denton, were neither a licensed professional service nor a service within the list.

The PSPA applies to contracts within the scope of the practice of accounting, architecture, optometry, medicine, or professional engineering as defined by the laws of the State of Texas or those performed by anyone licensed as an architect, optometrist, physician, surgeon, certified public accountant, or professional engineer in connection with his professional employment or practice. *Id.* The PSPA removed agency contracts for these types of services from the generally used competitive bid process and instead required the agencies to focus on the "demonstrated competence and qualifications" of the provider so long as their fees were at "fair and reasonable prices." Act of March 24, 1971, 62d Leg., R.S., ch. 38, 1971 Tex. Gen Laws 72, *repealed by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 986 (current version at TEX. GOV'T CODE ANN. § 2254.003). Importantly, the PSPA also provided that any contract by such an agency that violated any provision of the PSPA was void "as contrary to the public policy" and was not to be given effect or enforced. Act of March 24, 1971,

62d Leg., R.S., ch. 38, 1971 Tex. Gen Laws 72, *repealed by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 986 (current version at TEX. GOV'T CODE ANN. § 2254.005).

At the time the parties entered into this contract, the practice of accounting was also governed by the Accountancy Act of 1979 and the Rules of Professional Conduct.[3] The Rules of Professional Conduct defined the practice of public accountancy as including the offering of services where a person or entity holds itself out as a licensee regarding one or more kinds of services "involving the use of accounting or auditing skills, including the issuance of reports on financial statements, or of one or more kinds of management advisory or consulting services." 22 TEX. ADMIN. CODE § 501.52(14).

■ The issue of whether a contract falls within the purview of a particular statute is a question of law. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989); *Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 191 (Tex. App.—Fort Worth 1995, writ denied). To make this determination, we must decide whether the statute covers this type of contract by looking at the terms of the contract.

■ The contract is a letter agreement submitted on MAS letterhead and addressed to the Denton mayor and city council members. In pertinent part it states:

1. M.A.S. agrees to conduct a **franchise compliance audit** . . . .

. . . .

**3.** Act of May 28, 1979, 66th Leg., R.S., ch. 646, 1979 Tex. Gen. Laws 1479 (amended 1981, 1985, 1987, 1989, 1991, 1993, 1997, & 1999) (current version at TEX.REV.CIV. STAT. ANN. art. 41a–1 (Vernon Supp.2001)); 22 TEX. ADMIN. CODE § 501.52(14) (last modified June 11, 2000) *available at* http://info.sos.state.tx.us/pub/plsql/read-tac\$ext.TacPage?sl = R&app = 9&p_dir = &p_rloc = &p_tloc = &p_ploc = &pg = 1&p_tac = &ti = 22&pt = 22&ch = 501&rl = 52.

3. The **Audit** ... shall be to determine if any franchise fees or other amounts are **now due and owing the City**. ...

4. At the completion of the **Audit,** M.A.S. shall provide City with a **final audit report** which will outline the **audit work performed,** explain the **audit findings** and provide recommendations for the improvement of future franchise fee **reporting and compliance** efforts.

5. As compensation ... City agrees to pay M.A.S. as follows:

> Fifty percent (50%) of any amounts recovered, refunded or credited and accepted as a result of any of the **audit findings,** including, fifty percent (50%) of the value of any other compensation given to and accepted by the City as a result of the **audit findings.**

> All compensation shall be paid to M.A.S. within thirty (30) days after the date such amounts are collected and refunded to City.

. . . .

7. ... [A]ll services ... shall be completed within 150 days from the date of this Letter Agreement.

8. M.A.S. shall exercise the **same degree of care, skill and diligence** in the performance of the services provided hereunder as is ordinarily provided by a certified public accountant under similar circumstances. [Emphasis added.]

We conclude as a matter of law that this letter agreement falls within the PSPA's definition of professional services. First, the agreement itself represents that MAS will use the same degree of care, skill, and diligence as ordinarily provided by a certified public accountant performing the same services. Also, the description of the services to be provided fits within the broad category "within the scope of the practice of accounting." Additionally, the proposal to the agreement describes the services as auditing and consulting services and includes a representation that MAS professionals include auditors and accountants with expertise in evaluating and drafting franchise agreements and conducting franchise audits.

■ Because the PSPA requires strict compliance with its provisions, we must next determine whether the agreement violated the PSPA. Denton claims its contract with MAS violates two provisions of the PSPA. First, contracts for professional services are not to include contingency fees. Second, even if this fee is based on an hourly rate, it would be a rate of over $350 per hour, and would therefore be an unreasonable fee.

■ We conclude the agreement created a contingency fee of fifty percent of Denton's recovery. We do not see how the agreement could be interpreted in any other manner. The PSPA specifically provides that any contract not in compliance with the PSPA is void and contrary to public policy. A void agreement is unenforceable according to section four of the PSPA.[4] Because MAS concedes that if the PSPA applies, the contingent fee agreement violates the PSPA, we hold the agreement is void. MAS argues, however, that because Denton has accepted the benefits of the agreement and it has been performed by MAS, Denton has ratified the agreement and is estopped to raise the illegality of the contract. We disagree.

■ A contract made in violation of a statute is illegal. *Richmond Printing v. Port of Houston Auth.,* 996 S.W.2d 220,

---

4. *See* Act of March 24, 1971, 62d Leg., R.S., ch. 38, 1971 Tex. Gen Laws 72, *repealed by* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 46, 1993 Tex. Gen. Laws 583, 986 (current version at TEX. GOV'T CODE ANN. § 2254.005).

224 (Tex.App.—Houston [14th Dist.] 1999, no pet.). Estoppel and ratification doctrines will not make void contracts enforceable. *Cont'l Fire & Cas. Ins. Corp. v. Am. Mfg. Co.*, 221 S.W.2d 1006, 1009 (Tex. Civ.App.—Fort Worth 1949, writ ref'd); *see also Richmond Printing*, 996 S.W.2d at 224-25. Thus, we conclude that Denton is not estopped from asserting the voidness of the contract and cannot ratify the void contract by accepting performance under it. We sustain Denton's first issue. Because we have sustained Denton's first issue we do not address its second issue on the reasonableness of the fee it paid to MAS. In its third issue, however, Denton seeks a refund of the $82,000 fee it paid to MAS in 1988 and attorney's fees on its declaratory judgment action. We now turn to these issues, which are tied to MAS's alternative claims for recovery.

### Denton's Right to a Refund

■ After the jury verdict, in the court's findings of fact and conclusions of law, the court held that the contract entered into between Denton and MAS was not subject to the provisions of the PSPA and further, that the type of services provided by MAS were not included within the definition of the practice of accountancy. Denton filed a motion for new trial on the court's determination of the applicability of the PSPA voidness issue and sought a return of the fee it previously paid to MAS, thus clearly preserving its issues on appeal. *See* TEX.R.APP. P. 33.1.

■ When a court holds a contract void, not merely voidable, a party may seek recovery for amounts paid under the common law theory of *quantum valebant* for money had and received. *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 74 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.) (citing *City of Beaumont v. Moore*, 146 Tex. 46, 202 S.W.2d 448, 452

(1947)). Thus, because the trial court should have held the contract void, it should have entered judgment for a refund of the fees paid by Denton to MAS. Denton's third issue is sustained. We turn to the appropriate disposition on appeal.

### Disposition on Appeal

MAS seeks a remand for trial under its theories of implied contract and quantum meruit. MAS pled for recovery of the reasonable value of its services in its fifth amended petition under these theories. It says it is entitled to a remand to try these two theories should this court reverse on the PSPA voidness issue. MAS contends that because Denton sought and lost a summary judgment motion on MAS's claims against it, it can now request a trial on these issues that were not submitted to the jury. Denton contends that because MAS failed to submit these issues to the trier of fact, MAS has waived its right to recover under either of those theories, and that Denton is entitled to a refund of the full $82,293.71 that Denton already paid MAS in 1988.

A close look at the record shows that all parties understood the issue of the applicability of the PSPA to be a question of law for the trial court and that if the trial court ruled it to be inapplicable, the only questions for the jury related to performance and damage issues under the express contract. Alternatively, if the trial court ruled that the contract was void because of the PSPA, the reasonable value of the services rendered would be a question-of-fact issue that should be submitted to the trier of fact under any equitable claims the court might hold viable. However, neither party obtained a finding or alternative findings on all of their respective issues. MAS failed to obtain findings on its theories of implied contract or quantum meruit, and Denton failed to obtain alternative

findings on its right to recover the fee it had already paid had the court held the contract void or on the value of services rendered by MAS.

During pretrial conferences and discussions on the admissibility of certain evidence, the parties and the court focused on what was being tried in front of the jury and what would be tried to the court. It was important to determine what claims were being tried to the jury so that the court could properly rule on evidentiary objections before the jury. Denton did not want MAS bringing in evidence that it sued to recover the $82,000 it had already paid to MAS. Likewise, MAS wanted to keep out evidence of the reasonable value of the services it performed. Denton's counsel summarized the dilemma in the pretrial conference as follows: "The question that was raised ... was one of the counterclaim we made, which is actually going to be a point of law to the Court, if the Court eventually decides or declares this contract to be void. We have put in a claim that the money should be returned to us minus whatever they're entitled to in quantum meruit." [5] Pretrial, the court ruled the issue of the fairness and reasonableness of the fees owed to MAS would be submitted to the jury, but without them being told the consequence of their finding. At the charge conference, Denton submitted and requested an issue on the reasonable value of the work performed by MAS. Denton needed this as an alternative finding to support its claim that the fees

charged were unreasonable, thereby rendering the contract void under its alternative PSPA theory. Denton also needed this finding to justify at least a partial refund of the $82,000. The court refused this issue despite its pretrial ruling. Although MAS needed a similar finding on "fairness and reasonableness" for its implied contract or quantum meruit claim to offset any refund the court might order if it found the express contract void, it failed to submit or request this issue.

Because the court had also previously determined that Denton's issue on the voidness of the contract was an issue for the court to determine as a matter of law, Denton presented a bill of exceptions in support of application of the PSPA under the theory the fee was unreasonable while the jury was out. The court withheld its ruling until after the jury returned its verdict.[6] The jury returned a verdict in favor of MAS on the jury's express contract issues and the trial court entered judgment on that verdict. Both parties filed motions for judgment notwithstanding the verdict.

Denton's motion focused primarily on its claim that the trial court erred in concluding the PSPA did not apply to the parties' contract. MAS's motion focused on the jury's erroneous damage award; MAS claimed the evidence supported an award of $424,184.39 and $214,761.98 in future damages, not the $251,252 awarded, and

---

5.  Eventually, they all agreed that the only claim being tried to the jury was the express contract claim. MAS conceded that its claims of implied contract and quantum meruit were not being tried to the jury. Further, they agreed that the issue of attorney's fees would be tried to the court after the express contract action was submitted to the jury.

6.  Only Denton put on evidence at this post-trial hearing. MAS did not controvert or

object to Denton's expert's live testimony. MAS had objected to his testimony at the summary judgment stage, but failed to renew its objections, if any, to Denton's expert. Post-trial, MAS claimed its objections to the same evidence at the motion for summary judgment stage preserved its objections to Denton's post-trial evidence. MAS's failure to re-urge its objections waives its objections. *See* TEX.R.APP. P. 33.1.

prayed for the court to correct the damages.[7]

We conclude that Denton preserved error on its requested issue regarding the value of the services rendered by MAS. *See* TEX.R. CIV. P. 271, 279; *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992) (op. on reh'g). However, to preserve error in a trial to the bench on MAS's alternative claims of implied contract and quantum meruit, the alternative claims should have been tried to the court. *See generally Roberts v. Roberts,* 999 S.W.2d 424, 433–34 (Tex.App.—El Paso 1999, no pet.) (concluding that findings of fact and conclusions of law are available only when some issues are submitted to the court). MAS put on no evidence to support its alternative claims and failed to move the court for judgment on its alternative claims or request findings of fact or conclusions of law on its claims. TEX.R. CIV. P. 174, 296–299a, 301.[8] Thus, MAS is seeking a remand to try issues it never tried and that were never presented to the trial court. TEX. R.APP. P. 33.1. Failure to present evidence to the trial court that is necessary to the trial court's judgment generally preserves nothing for review. *Id.*

However, in this case we are presented with the anomaly that Denton specifically conceded MAS's right to recover under the theory of quantum meruit. In pretrial conferences Denton clearly stated its position: "If the Court eventually decides or declares this contract to be void . . . we have put in a claim that the money should be returned to us minus whatever they're entitled to in quantum meruit." Additionally, the record shows Denton hired MAS to conduct the audit, MAS conducted and concluded the audit, and Denton paid $82,000 in full satisfaction for the audit. Denton concedes it paid MAS and contends MAS was entitled to nothing more. And in its motion for summary judgment it prayed for recovery of the $82,000 less a "reasonable hourly fee that MAS should receive for work actually performed." Further, Denton admitted the services were of some value to it in negotiating a settlement with GTE for underpayments. Lastly, the court's unchallenged finding of fact shows MAS performed the audit. Under these circumstances, we hold that MAS is entitled to recover under its quantum meruit claim. To hold otherwise would unjustly enrich Denton. *See Vortt Exploration Co.,* 787 S.W.2d at 944. Because of this holding, we conclude that in the interest of justice a remand is required. TEX.R.APP. P. 43.3(b); *see Centex Corp. v. Dalton,* 840 S.W.2d 952, 955 (Tex. 1992); *Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex.1990) (op. on reh'g).

For these reasons, we reverse the findings and conclusions by the trial court on the applicability of the PSPA and on the voidness of the agreement and render judgment for Denton that the PSPA applied to the agreement between the parties and that therefore the agreement was void ab initio. We reverse the judgment entered by the trial court on the jury's verdict regarding the performance of the

---

7. Because MAS did not file a notice of appeal, it has waived its right to seek a greater recovery. *See* TEX.R.APP. P. 25.1(c); *City of San Antonio v. Hernandez,* 53 S.W.3d 404, 407 (Tex.App.—San Antonio 2001, no pet. h.).

8. To recover under quantum meruit, a claimant must show that valuable services were rendered for the person sought to be charged,

that such services were accepted, used and enjoyed by that person, and that such services were provided under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid. *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990).

agreement and the damages it found and render judgment that MAS take nothing on its express contract claim. We remand the case to the trial court for trial on the merits on the quantum meruit claim and attorney's fees as appropriate, if any, to the prevailing party. We render judgment for Denton on its claim for a refund of the fees previously paid to MAS, but remand to the trial court for a determination on the amount of the refund due Denton, after offsets, if any, and interest.[9]

9. Because of our disposition on Denton's first three issues, we need not address its remaining issues.