02-11-048-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00048-CV

 

 


 
 
 The City of Fort Worth
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Janet Anne Lane
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 342nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
the City of Fort Worth brings this interlocutory appeal from the trial court’s
order denying in part its plea to the jurisdiction on the whistleblower claim
filed by Appellee Janet Anne Lane.  In one issue, Fort Worth argues that Lane
did not establish a waiver of immunity under the Texas Whistleblower Act because
she did not make a good faith report of a violation of law.  Because we hold that
Lane established a waiver of immunity under the Whistleblower Act, we affirm
the trial court’s order.

Background

Lane,
a licensed attorney, worked as an audit manager for Fort Worth’s internal audit
department.  The city auditor at that time was Costa Triantaphilides.

As
part of her duties, Lane was assigned to draft a Request for Proposals (RFP) to
solicit competitive sealed proposals on a contract to perform a healthcare claims
audit.  Before the RFP had been posted, Triantaphilides asked Lane for a draft
of the RFP.  Triantaphilides told Lane that Garland Asher, a member of Fort
Worth’s Audit and Finance Advisory Committee, wanted to see the draft because
his friend wanted to bid on the project.  Lane reported this conversation to
her immediate supervisor, Terry Holderman.

Fort
Worth issued the RFP on September 6, 2007.  Healthcare Data Management, Inc. (HDM)
was among the companies that submitted a bid.  Triantaphilides told Lane that
Asher wanted to see the bid from HDM.  Lane objected to the request but
ultimately complied.  Lane reported the conversation to Holderman.

In
May 2008, Lane called Fort Worth’s fraud hotline to report Triantaphilides’s
request of the RFP draft and his statement that Asher wanted to see HDM’s
proposal because she believed these acts violated the Texas competitive procurement
laws and the Texas Public Information Act.[2]  This complaint was
investigated by Fort Worth’s police department.  Lane also filed a complaint
with Fort Worth’s employee relations department.  In April 2009, she reported the
same acts to the FBI.

The
employee relations department denied her complaint, and Lane’s appeal of that
denial was unsuccessful.  The city manager terminated the police department’s
investigation.  On August 13, 2009, Fort Worth terminated Lane’s employment.

Lane
filed suit against Fort Worth asserting a violation of the Whistleblower Act.  She
alleged that she had been fired in retaliation for her reports of misconduct,
that she had in good faith reasonably believed that the acts reported had
violated the law, that she reported the activity to the Fort Worth police
department and the FBI, and that Fort Worth retaliated against her for her
report of the activity.

Fort
Worth filed a plea to the jurisdiction, alleging that a reasonably prudent
attorney would not have believed that the reported conduct violated Texas’s competitive
bidding laws or the Texas Public Information Act and that because Lane is an
attorney, her reports were therefore not made in good faith under the
Whistleblower Act.  Fort Worth also alleged that its immunity had not been
waived by the Whistleblower Act for Lane’s report of an alleged violation of
the Public Information Act because the report had not been made to an appropriate
law-enforcement authority.  Fort Worth alleged that a reasonably prudent
attorney would not have believed that either Fort Worth’s fraud hotline or the
FBI would have authority to enforce or investigate an alleged violation of the Public
Information Act.

The
trial court granted Fort Worth’s plea as to the part of Lane’s claim that was
based on her report of a violation of the Public Information Act and as to any
part of Lane’s claim based on her report to the FBI.  The trial court denied
the plea as to Lane’s report to Fort Worth’s fraud hotline of a violation of
Texas’s competitive procurement laws.  Fort Worth now appeals.

Standard
of Review

We
review a trial court’s ruling on a plea to the jurisdiction de novo.[3]
 A plaintiff has the burden of alleging facts that affirmatively demonstrate
that the trial court has subject-matter jurisdiction.[4]
 When a plea to the jurisdiction challenges the pleadings, a court looks at the
allegations in the plaintiff’s pleadings and accepts them as true.[5]
 If, however, the plea to the jurisdiction challenges the existence of
jurisdictional facts, a court must also consider the relevant evidence
necessary to resolve the jurisdictional issues raised.[6]
 When a jurisdictional challenge also implicates the merits of the plaintiff’s
claim, then the trial court considers the evidence submitted by the parties to
determine if a fact question exists.[7]  If the evidence creates
a fact question about the jurisdictional issue, then the trial court cannot
grant the plea to the jurisdiction; instead, the trial court must leave the
fact issue for determination by the factfinder.[8]  But if the evidence is
undisputed, or if the evidence does not raise a fact question on the
jurisdictional issue, the trial court rules on the plea to the jurisdiction as
a matter of law.[9]

The
Whistleblower Act

Texas’s
Whistleblower Act provides that a governmental entity may not terminate the
employment of a person who in good faith reports a violation of the law by the
government entity or another public employee to an appropriate law enforcement
authority.[10]  The governmental
entity’s immunity is waived for a claim by the public employee alleging a
violation under the Whistleblower Act.[11]

The
Whistleblower Act requires the report to have been made “in good faith.”[12] 
“Good faith” has both a subjective and objective component and is shown when “(1)
the employee believed that the conduct reported was a violation of law and (2)
the employee’s belief was reasonable in light of the employee’s training and
experience,” meaning that a reasonably prudent employee in similar
circumstances would have believed that the reported facts constituted a
violation of the law.[13]

Procurement
of Goods and Services by Municipalities

The
local government code imposes competitive requirements for certain purchases by
municipalities.[14]  Chapter 252 provides
that before a municipality may enter into a contract that would require
spending more than $50,000 from municipal funds, the municipality must follow
one of the competitive procurement methods specified in the chapter.[15]
 Section 252.022 states that the chapter does not apply to “a procurement for . . .
professional . . . services.”[16]  Nothing in that section,
however, prohibits municipalities from using competitive bidding to procure
professional services.  Chapter 252 does not define the term “professional
services.”[17]

Municipality
purchases are also governed by section 2254.003 of the government code.  That
section provides that “[a] governmental entity may not select a provider
of professional services . . . or award a contract for the
services on the basis of competitive bids submitted for the contract or for the
services.”[18]  Instead, the government
entity “shall make the selection and award . . . on the basis of
demonstrated competence and qualifications to perform the services; and . . .
for a fair and reasonable price.”[19]  That chapter defines “professional
services,” and that definition includes services within the scope of the
practice of accounting as that practice is defined by state law.[20]

In
summary, for services defined as professional services under the government
code, municipalities may not use competitive methods to purchase those services
but instead must use the procedure set out in the government code.  For
services that may be considered “professional services” as that term is used in
chapter 252 of the local government code but that do not fall within the
definition of professional services in the government code, a municipality is
not required to follow competitive methods to procure the services, but it is
not prohibited from using such procedures.[21]

Analysis

In
one issue, Fort Worth argues that because Lane did not have a good faith belief
that the conduct she reported violated the competitive procurement law,
immunity has not been waived.  Fort Worth makes two main arguments under this
issue.  First, it argues that professional services are exempt from competitive
procurement laws, that a city has discretion to treat some services as
professional services and thereby exclude their purchase from competitive
procurement procedures, and that because the evidence shows that Fort Worth
chose to treat the services here as professional services, their purchase was
exempt from competitive procurement laws.

In
support of its argument that it treated these services as professional services,
Fort Worth points out that the RFP in this case required the awardee to have
professional liability insurance, which indicated these were professional
services, and that the contract described the work as professional services.  Fort
Worth argues that because the competitive procurement laws do not apply to the
procurement of professional services, Lane’s report that Fort Worth violated
these laws was not made in good faith.

In
response to Fort Worth’s plea to the jurisdiction, Lane produced a copy of Fort
Worth’s administrative regulations governing the procurement of goods and
services.  Fort Worth appears to have three primary methods of procuring goods
and services.  The first, “Invitations To Bid” (ITBs), are for items
“specifically defined and identified with specifications and that have a total
anticipated cost in excess of $50,000.”  ITBs must comply with the  competitive
bidding statutes.  For procuring certain professional services “that are
expressly exempt from competitive bidding by State law,” Fort Worth uses a
“Request for Qualifications (RFQ).”

The
third method—RFPs—is used for “the procurement of high technology systems,
software, telecommunications equipment, insurance[,] and services not otherwise
suitable to the Invitation to Bid method.”  This method, then, is for items
that do not fit clearly within the category of goods and services suitable to
ITBs or that are clearly required to be procured by RFQs.  Fort Worth therefore
makes a distinction between services that should be solicited by RFPs and
services that are explicitly professional services under state law and should therefore
be solicited by way of RFQs.

When
describing RFPs in more detail, the administrative regulations say that “a
municipality may use the competitive sealed proposal procedure for the purchase
of goods and services.”  The regulations go on to describe these procedures for
RFPs.  The procedures set out for RFPs are different from those for RFQs, in
which an award is “based on demonstrated competence and qualifications to
perform the services,” and under which Fort Worth “shall first select the most
highly qualified provider, and then attempt to negotiate with that provider for
a contract at a fair and reasonable price.”

In
contrast, when using the competitive sealed bid process for an RFP, Fort Worth
is required to take price into consideration in selecting the provider.  The
sealed bids or proposals that are submitted are not opened until the stated
date and time for opening.  The regulations specify eight criteria for
evaluating proposals, including price,[22] unlike RFQs, which
require selection of the most highly qualified provider.

The
services at issue in this case were solicited by way of RFP.  Although not
identical to the procedures for an ITB, the competitive sealed bid procedures
for RFPs are clearly not the same as the procedures for RFQs, which are specifically
exempt from competitive bidding laws.  The fact that Fort Worth chose to
solicit competitive sealed bids by way of RFP rather than an RFQ is some
evidence that Fort Worth did not consider these services to fit within the
category of services that are expressly exempt from competitive bidding.  It is
therefore some evidence that could lead a reasonable person to conclude that
Fort Worth was required to follow the procedures in chapter 252.

In
other words, if these services were included within the definition of
“professional services” in government code section 2254.002, then Fort Worth
should not have used the RFP to procure the services by way of competitive
sealed proposals and should have used an RFQ.  Using competitive procurement
procedures in that case would render the contract void.[23] 
On the other hand, if the services did not clearly fit within that definition,
then Fort Worth could choose to follow competitive procurement laws, although
it was not required to do so.  Fort Worth does not deny that the services in
this contract were solicited by a procedure set out in chapter 252—competitive
sealed proposals.  It argues, however, that it was not required to use this
procedure because the services in this case were professional services.  But Fort
Worth did use the competitive procedure, even if not required to.  Fort
Worth appears to be implicitly arguing that because it was not required to use
competitive procedures, then if it did use competitive procedures, it was free
to do so in a manner that may have violated chapter 252.  We do not read the
statutes in that way.  There is no exemption in chapter 252 that would allow a
municipality to use the methods provided in chapter 252 but yet only apply the
regulations of that chapter that it chooses.  If these services could be
purchased using one of the competitive methods set out in chapter 252, and Fort
Worth chose to do so, then it was required to do so in accordance with the laws
governing those procedures.[24]

Fort
Worth’s second main argument is, essentially, that this court has said that
auditing services are accounting services, and because accounting services are
professional services under the law, the auditing services here were
professional services exempt from competitive procurement laws.  Fort Worth
relies on this court’s opinion in City of Denton, in which we held that
the auditing services contracted for in that case fell within the practice of
accounting.[25]

In City
of Denton, this court had to determine whether the auditing services were
professional services in order to determine whether the services contract was
void because it did not comply with government code chapter 2254.[26] 
In this case, however, the question is not whether the auditing services were
professional services, but whether Lane would have reasonably believed that
they were not and that Fort Worth was therefore required to follow competitive
procurement procedures to solicit and award the auditing services contract.  This
court did not hold in City of Denton that auditing services always fall
within the practice of accounting, and the fact the auditing services in City
of Denton fit within the definition of accounting services does not
necessarily mean that auditing services are always accounting services.[27]  Our holding in City
of Denton was based on the specific facts of that case.

Fort
Worth argues that in City of Denton, this court held “that an auditing
and consulting agreement was a professional-services agreement not subject to
the competitive-bid process.”  This statement, though correct with regard to
our view of the auditing services solicited in that case, does not reflect the
significance of that case to Fort Worth’s argument here.  We held in that case
that because the services in that case were professional services, not only was
Denton not required to use competitive bidding, but competitive bidding could
not be used by law.[28]  Because competitive
bidding was used, the contract was void.[29]  Fort Worth does not
argue that it was prohibited from using the procedures in chapter 252 and
required to use the rules in the government code.  To make such an argument
would be to implicitly argue that it violated that law and that this contract
is void.

Further,
Fort Worth’s arguments appear to conflict with each other.  As we pointed out,
if under City of Denton, auditing services are always within the practice
of accounting, then Fort Worth would have been required to issue an RFQ and
follow the rules in government code chapter 2254 for the procurement of
professional services.  But Fort Worth also argues that it had the discretion
to decide that these were professional services—which is true only if City
of Denton does not stand for the proposition that auditing services are
always accounting services.  If Fort Worth had discretion to decide that these
services were professional services, then it also had the discretion to decide
that the services were not professional services and to apply the
regulations for competitive bidding.  It appears to have done so in this case.

Rather
than help Fort Worth, City of Denton actually demonstrates the
reasonableness of Lane’s belief.  After this court handed down its opinion in
that case, Fort Worth was on notice that if the auditing services it solicited
were professional services, then it could not use the competitive procurement
procedures in chapter 252 to select the provider and instead was required to
use the procedure for the procurement of professional services.  Here, Fort
Worth did not use its RFQ procedure for soliciting professional services. 
Instead, it used an RFP calling for competitive sealed proposals.  It would not
be unreasonable for an employee in Lane’s situation to believe that Fort Worth had
determined that the solicited services were not professional services based on
its use of the competitive procurement process.  That is, Lane could reasonably
have believed that Fort Worth would not have used a process that would result
in it entering into a contract that it knew or should have known was void.  This
view could be reconciled with City of Denton by the language we used in
that case, noting that we determined whether government code section 2254.002
covered the contract in that case by looking at the terms of that contract.[30] 
In other words, we determined that auditing services fell within the definition
of accounting based on the facts of that case and did not hold that auditing
services are always accounting services.

The
question in this case is not whether the contract was for professional services
that were exempt from the competitive procurement laws, and we do not decide
that question here.  The question is whether a reasonably prudent employee in
Lane’s situation would have believed that Fort Worth was required to comply
with the competitive procurement laws.  We answer that question in the
affirmative and hold that under the circumstances, Lane’s report was made in
good faith.[31]  We consequently hold
that the trial court did not err by denying Fort Worth’s plea to the
jurisdiction on this part of Lane’s claim, and we therefore overrule Fort
Worth’s sole issue.

Conclusion

Having
overruled Fort Worth’s sole issue, we affirm the trial court’s order denying in
part Fort Worth’s plea to the jurisdiction.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT, J.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by
Assignment).

 

DELIVERED:  December 22,
2011









[1]See Tex. R. App. P. 47.4.





[2]See
Tex. Loc. Gov’t Code Ann. § 252.049 (West 2005) (providing confidentiality
requirements for information in competitive bids or proposals); see also Tex.
Gov’t Code Ann. § 552.104 (West 2004) (providing that certain information
related to competitive bidding is exempted from disclosure under the public
information act).





[3]City of Elsa v. Gonzalez, 325 S.W.3d
622, 625 (Tex. 2010).





[4]Id.; City of Fort Worth v. Robinson,
300 S.W.3d 892, 895 (Tex. App.—Fort Worth 2009, no pet.).





[5]Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).





[6]Id. at 227; see also City of Elsa,
325 S.W.3d at 625 (“[W]e consider the plaintiff’s
pleadings and factual assertions, as well as any evidence in the record that is
relevant to the jurisdictional issue.”).





[7]Miranda, 133 S.W.3d at 227.





[8]Id. at 227–28.





[9]Id. at 228.





[10]Tex. Gov’t Code Ann. § 554.002(a) (West 2004).





[11]Id. § 554.0035 (West 2004).





[12]Id. § 554.002(a); City of Elsa,
325 S.W.3d at 626.





[13]Wichita Cnty., Tex. v. Hart, 917 S.W.2d 779, 784 (Tex. 1996); see also City of Elsa,
325 S.W.3d at 626.





[14]See
Tex. Loc. Gov’t Code Ann. § 252.021 (West Supp. 2011).





[15]Id.





[16]Id.
§ 252.022(a)(4) (West Supp. 2011).





[17]See
id. § 252.001
(West 2005) (providing definitions applicable to that chapter).





[18]Tex. Gov’t Code Ann. § 2254.003(a) (West 2008) (emphasis
added).





[19]Id.





[20]Id. § 2254.002(2)(A)(i) (West 2008).





[21]See id. §§ 2254.002(2)(A)(i), 2254.003(a); Tex. Loc. Gov’t Code Ann. § 252.022; Tex. Att’y Gen. Op. No. DM-106 (1992) (stating that
municipalities may exempt professional services from the competitive bidding
process but are not required to do so unless the services are for professional
services set out in the professional services procurement act, government code
sections 2254.001–2254.007).





[22]See
Tex. Loc. Gov’t Code Ann. § 252.043(b) (West 2005) (setting out eight factors a
municipality may consider in determining which bid provides the best value for
the municipality).





[23]See
Tex. Loc. Gov’t Code Ann. § 252.061 (West 2005); see also City of Denton v.
Mun. Admin. Servs., Inc., 59 S.W.3d 764, 769 (Tex. App.—Fort Worth 2001, no
pet.).





[24]See
Tex. Loc. Gov’t Code Ann. § 252.062 (West 2005) (providing that a municipal
officer or employee who intentionally or knowingly violates section 252.021
commits a criminal offense); see also Tex. Loc. Gov’t Code Ann.
§ 252.043(a) (providing that “[i]f the competitive sealed bidding
requirement applies to the contract for goods or services, the contract must be
awarded to the lowest responsible bidder or to the bidder who provides goods or
services at the best value for the municipality”).





[25]City
of Denton, 59 S.W.3d at 769.





[26]Id.





[27]See Tex. Att’y Gen. Op. No. JM-1038 (1989) (stating that “[w]hether the services of a
third party administrator are professional services . . . is a
question of fact, and depends on the particular services to be provided under a
specific contract”).





[28]City
of Denton, 59 S.W.3d at 769.





[29]Id.





[30]See
City of Denton, 59 S.W.3d at 768.





[31]See
Tex. Loc. Gov’t Code Ann. § 252.062.