

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00048-CV

THE CITY OF FORT WORTH                                                    APPELLANT

V.

JANET ANNE LANE                                                          APPELLEE

----------

## FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant the City of Fort Worth brings this interlocutory appeal from the trial court's order denying in part its plea to the jurisdiction on the whistleblower claim filed by Appellee Janet Anne Lane. In one issue, Fort Worth argues that Lane did not establish a waiver of immunity under the Texas Whistleblower Act because she did not make a good faith report of a violation of law. Because we

---

[1]See Tex. R. App. P. 47.4.

hold that Lane established a waiver of immunity under the Whistleblower Act, we affirm the trial court's order.

## Background

Lane, a licensed attorney, worked as an audit manager for Fort Worth's internal audit department. The city auditor at that time was Costa Triantaphilides.

As part of her duties, Lane was assigned to draft a Request for Proposals (RFP) to solicit competitive sealed proposals on a contract to perform a healthcare claims audit. Before the RFP had been posted, Triantaphilides asked Lane for a draft of the RFP. Triantaphilides told Lane that Garland Asher, a member of Fort Worth's Audit and Finance Advisory Committee, wanted to see the draft because his friend wanted to bid on the project. Lane reported this conversation to her immediate supervisor, Terry Holderman.

Fort Worth issued the RFP on September 6, 2007. Healthcare Data Management, Inc. (HDM) was among the companies that submitted a bid. Triantaphilides told Lane that Asher wanted to see the bid from HDM. Lane objected to the request but ultimately complied. Lane reported the conversation to Holderman.

In May 2008, Lane called Fort Worth's fraud hotline to report Triantaphilides's request of the RFP draft and his statement that Asher wanted to see HDM's proposal because she believed these acts violated the Texas

competitive procurement laws and the Texas Public Information Act.[2] This complaint was investigated by Fort Worth's police department. Lane also filed a complaint with Fort Worth's employee relations department. In April 2009, she reported the same acts to the FBI.

The employee relations department denied her complaint, and Lane's appeal of that denial was unsuccessful. The city manager terminated the police department's investigation. On August 13, 2009, Fort Worth terminated Lane's employment.

Lane filed suit against Fort Worth asserting a violation of the Whistleblower Act. She alleged that she had been fired in retaliation for her reports of misconduct, that she had in good faith reasonably believed that the acts reported had violated the law, that she reported the activity to the Fort Worth police department and the FBI, and that Fort Worth retaliated against her for her report of the activity.

Fort Worth filed a plea to the jurisdiction, alleging that a reasonably prudent attorney would not have believed that the reported conduct violated Texas's competitive bidding laws or the Texas Public Information Act and that because Lane is an attorney, her reports were therefore not made in good faith

---

[2]*See* Tex. Loc. Gov't Code Ann. § 252.049 (West 2005) (providing confidentiality requirements for information in competitive bids or proposals); *see also* Tex. Gov't Code Ann. § 552.104 (West 2004) (providing that certain information related to competitive bidding is exempted from disclosure under the public information act).

under the Whistleblower Act. Fort Worth also alleged that its immunity had not been waived by the Whistleblower Act for Lane's report of an alleged violation of the Public Information Act because the report had not been made to an appropriate law-enforcement authority. Fort Worth alleged that a reasonably prudent attorney would not have believed that either Fort Worth's fraud hotline or the FBI would have authority to enforce or investigate an alleged violation of the Public Information Act.

The trial court granted Fort Worth's plea as to the part of Lane's claim that was based on her report of a violation of the Public Information Act and as to any part of Lane's claim based on her report to the FBI. The trial court denied the plea as to Lane's report to Fort Worth's fraud hotline of a violation of Texas's competitive procurement laws. Fort Worth now appeals.

**Standard of Review**

We review a trial court's ruling on a plea to the jurisdiction de novo.[3] A plaintiff has the burden of alleging facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction.[4] When a plea to the jurisdiction challenges the pleadings, a court looks at the allegations in the plaintiff's

---

[3]*City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010).

[4]*Id.*; *City of Fort Worth v. Robinson*, 300 S.W.3d 892, 895 (Tex. App.—Fort Worth 2009, no pet.).

4

pleadings and accepts them as true.[5]  If, however, the plea to the jurisdiction challenges the existence of jurisdictional facts, a court must also consider the relevant evidence necessary to resolve the jurisdictional issues raised.[6]  When a jurisdictional challenge also implicates the merits of the plaintiff's claim, then the trial court considers the evidence submitted by the parties to determine if a fact question exists.[7]  If the evidence creates a fact question about the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction; instead, the trial court must leave the fact issue for determination by the factfinder.[8]  But if the evidence is undisputed, or if the evidence does not raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.[9]

### The Whistleblower Act

Texas's Whistleblower Act provides that a governmental entity may not terminate the employment of a person who in good faith reports a violation of the law by the government entity or another public employee to an appropriate law

---

[5]*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[6]*Id.* at 227; *see also City of Elsa*, 325 S.W.3d at 625 ("[W]e consider the plaintiff's pleadings and factual assertions, as well as any evidence in the record that is relevant to the jurisdictional issue.").

[7]*Miranda*, 133 S.W.3d at 227.

[8]*Id.* at 227–28.

[9]*Id.* at 228.

enforcement authority.[10]   The governmental entity's immunity is waived for a claim by the public employee alleging a violation under the Whistleblower Act.[11]

The Whistleblower Act requires the report to have been made "in good faith."[12]   "Good faith" has both a subjective and objective component and is shown when "(1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience," meaning that a reasonably prudent employee in similar circumstances would have believed that the reported facts constituted a violation of the law.[13]

**Procurement of Goods and Services by Municipalities**

The local government code imposes competitive requirements for certain purchases by municipalities.[14]   Chapter 252 provides that before a municipality may enter into a contract that would require spending more than $50,000 from municipal funds, the municipality must follow one of the competitive procurement methods specified in the chapter.[15]   Section 252.022 states that the chapter does

---

[10]Tex. Gov't Code Ann. § 554.002(a) (West 2004).

[11]*Id.* § 554.0035 (West 2004).

[12]*Id.* § 554.002(a); *City of Elsa*, 325 S.W.3d at 626.

[13]*Wichita Cnty., Tex. v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996); *see also City of Elsa*, 325 S.W.3d at 626.

[14]*See* Tex. Loc. Gov't Code Ann. § 252.021 (West Supp. 2011).

[15]*Id.*

6

not apply to "a procurement for . . . professional . . . services."[16] Nothing in that section, however, prohibits municipalities from using competitive bidding to procure professional services. Chapter 252 does not define the term "professional services."[17]

Municipality purchases are also governed by section 2254.003 of the government code. That section provides that "[a] governmental entity *may not* select a provider of professional services . . . or award a contract for the services on the basis of competitive bids submitted for the contract or for the services."[18] Instead, the government entity "shall make the selection and award . . . on the basis of demonstrated competence and qualifications to perform the services; and . . . for a fair and reasonable price."[19] That chapter defines "professional services," and that definition includes services within the scope of the practice of accounting as that practice is defined by state law.[20]

In summary, for services defined as professional services under the government code, municipalities may not use competitive methods to purchase those services but instead must use the procedure set out in the government

---

[16]*Id.* § 252.022(a)(4) (West Supp. 2011).

[17]*See id.* § 252.001 (West 2005) (providing definitions applicable to that chapter).

[18]Tex. Gov't Code Ann. § 2254.003(a) (West 2008) (emphasis added).

[19]*Id.*

[20]*Id.* § 2254.002(2)(A)(i) (West 2008).

code. For services that may be considered "professional services" as that term is used in chapter 252 of the local government code but that do not fall within the definition of professional services in the government code, a municipality is not required to follow competitive methods to procure the services, but it is not prohibited from using such procedures.[21]

**Analysis**

In one issue, Fort Worth argues that because Lane did not have a good faith belief that the conduct she reported violated the competitive procurement law, immunity has not been waived. Fort Worth makes two main arguments under this issue. First, it argues that professional services are exempt from competitive procurement laws, that a city has discretion to treat some services as professional services and thereby exclude their purchase from competitive procurement procedures, and that because the evidence shows that Fort Worth chose to treat the services here as professional services, their purchase was exempt from competitive procurement laws.

In support of its argument that it treated these services as professional services, Fort Worth points out that the RFP in this case required the awardee to have professional liability insurance, which indicated these were professional

---

[21]*See id.* §§ 2254.002(2)(A)(i), 2254.003(a); Tex. Loc. Gov't Code Ann. § 252.022; Tex. Att'y Gen. Op. No. DM-106 (1992) (stating that municipalities may exempt professional services from the competitive bidding process but are not required to do so unless the services are for professional services set out in the professional services procurement act, government code sections 2254.001–2254.007).

services, and that the contract described the work as professional services. Fort Worth argues that because the competitive procurement laws do not apply to the procurement of professional services, Lane's report that Fort Worth violated these laws was not made in good faith.

In response to Fort Worth's plea to the jurisdiction, Lane produced a copy of Fort Worth's administrative regulations governing the procurement of goods and services. Fort Worth appears to have three primary methods of procuring goods and services. The first, "Invitations To Bid" (ITBs), are for items "specifically defined and identified with specifications and that have a total anticipated cost in excess of $50,000." ITBs must comply with the competitive bidding statutes. For procuring certain professional services "that are expressly exempt from competitive bidding by State law," Fort Worth uses a "Request for Qualifications (RFQ)."

The third method—RFPs—is used for "the procurement of high technology systems, software, telecommunications equipment, insurance[,] and services not otherwise suitable to the Invitation to Bid method." This method, then, is for items that do not fit clearly within the category of goods and services suitable to ITBs or that are clearly required to be procured by RFQs. Fort Worth therefore makes a distinction between services that should be solicited by RFPs and services that are explicitly professional services under state law and should therefore be solicited by way of RFQs.

9

When describing RFPs in more detail, the administrative regulations say that "a municipality may use the competitive sealed proposal procedure for the purchase of goods and services." The regulations go on to describe these procedures for RFPs. The procedures set out for RFPs are different from those for RFQs, in which an award is "based on demonstrated competence and qualifications to perform the services," and under which Fort Worth "shall first select the most highly qualified provider, and then attempt to negotiate with that provider for a contract at a fair and reasonable price."

In contrast, when using the competitive sealed bid process for an RFP, Fort Worth is required to take price into consideration in selecting the provider. The sealed bids or proposals that are submitted are not opened until the stated date and time for opening. The regulations specify eight criteria for evaluating proposals, including price,[22] unlike RFQs, which require selection of the most highly qualified provider.

The services at issue in this case were solicited by way of RFP. Although not identical to the procedures for an ITB, the competitive sealed bid procedures for RFPs are clearly not the same as the procedures for RFQs, which are specifically exempt from competitive bidding laws. The fact that Fort Worth chose to solicit competitive sealed bids by way of RFP rather than an RFQ is

---

[22]*See* Tex. Loc. Gov't Code Ann. § 252.043(b) (West 2005) (setting out eight factors a municipality may consider in determining which bid provides the best value for the municipality).

some evidence that Fort Worth did not consider these services to fit within the category of services that are expressly exempt from competitive bidding. It is therefore some evidence that could lead a reasonable person to conclude that Fort Worth was required to follow the procedures in chapter 252.

In other words, if these services were included within the definition of "professional services" in government code section 2254.002, then Fort Worth should not have used the RFP to procure the services by way of competitive sealed proposals and should have used an RFQ. Using competitive procurement procedures in that case would render the contract void.[23] On the other hand, if the services did not clearly fit within that definition, then Fort Worth could choose to follow competitive procurement laws, although it was not required to do so. Fort Worth does not deny that the services in this contract were solicited by a procedure set out in chapter 252—competitive sealed proposals. It argues, however, that it was not required to use this procedure because the services in this case were professional services. But Fort Worth *did* use the competitive procedure, even if not required to. Fort Worth appears to be implicitly arguing that because it was not required to use competitive procedures, then if it did use competitive procedures, it was free to do so in a manner that may have violated chapter 252. We do not read the statutes in that way. There

---

[23]*See* Tex. Loc. Gov't Code Ann. § 252.061 (West 2005); *see also City of Denton v. Mun. Admin. Servs., Inc.*, 59 S.W.3d 764, 769 (Tex. App.—Fort Worth 2001, no pet.).

is no exemption in chapter 252 that would allow a municipality to use the methods provided in chapter 252 but yet only apply the regulations of that chapter that it chooses. If these services could be purchased using one of the competitive methods set out in chapter 252, and Fort Worth chose to do so, then it was required to do so in accordance with the laws governing those procedures.[24]

Fort Worth's second main argument is, essentially, that this court has said that auditing services are accounting services, and because accounting services are professional services under the law, the auditing services here were professional services exempt from competitive procurement laws. Fort Worth relies on this court's opinion in *City of Denton*, in which we held that the auditing services contracted for in that case fell within the practice of accounting.[25]

In *City of Denton*, this court had to determine whether the auditing services were professional services in order to determine whether the services contract was void because it did not comply with government code chapter 2254.[26] In this

---

[24]*See* Tex. Loc. Gov't Code Ann. § 252.062 (West 2005) (providing that a municipal officer or employee who intentionally or knowingly violates section 252.021 commits a criminal offense); *see also* Tex. Loc. Gov't Code Ann. § 252.043(a) (providing that "[i]f the competitive sealed bidding requirement applies to the contract for goods or services, the contract must be awarded to the lowest responsible bidder or to the bidder who provides goods or services at the best value for the municipality").

[25]*City of Denton*, 59 S.W.3d at 769.

[26]*Id.*

case, however, the question is not whether the auditing services were professional services, but whether Lane would have reasonably believed that they were not and that Fort Worth was therefore required to follow competitive procurement procedures to solicit and award the auditing services contract. This court did not hold in *City of Denton* that auditing services always fall within the practice of accounting, and the fact the auditing services in *City of Denton* fit within the definition of accounting services does not necessarily mean that auditing services are always accounting services.[27] Our holding in *City of Denton* was based on the specific facts of that case.

Fort Worth argues that in *City of Denton*, this court held "that an auditing and consulting agreement was a professional-services agreement not subject to the competitive-bid process." This statement, though correct with regard to our view of the auditing services solicited in that case, does not reflect the significance of that case to Fort Worth's argument here. We held in that case that because the services in that case were professional services, not only was Denton not required to use competitive bidding, but competitive bidding *could not* be used by law.[28] Because competitive bidding was used, the contract was

---

[27] *See* Tex. Att'y Gen. Op. No. JM-1038 (1989) (stating that "[w]hether the services of a third party administrator are professional services . . . is a question of fact, and depends on the particular services to be provided under a specific contract").

[28] *City of Denton*, 59 S.W.3d at 769.

13

void.[29]   Fort Worth does not argue that it was prohibited from using the procedures in chapter 252 and required to use the rules in the government code. To make such an argument would be to implicitly argue that it violated that law and that this contract is void.

Further, Fort Worth's arguments appear to conflict with each other.  As we pointed out, if under *City of Denton*, auditing services are always within the practice of accounting, then Fort Worth would have been required to issue an RFQ and follow the rules in government code chapter 2254 for the procurement of professional services.  But Fort Worth also argues that it had the discretion to decide that these were professional services—which is true only if *City of Denton* does not stand for the proposition that auditing services are always accounting services.   If Fort Worth had discretion to decide that these services were professional services, then it also had the discretion to decide that the services were *not* professional services and to apply the regulations for competitive bidding.  It appears to have done so in this case.

Rather than help Fort Worth, *City of Denton* actually demonstrates the reasonableness of Lane's belief.  After this court handed down its opinion in that case, Fort Worth was on notice that if the auditing services it solicited were professional services, then it could not use the competitive procurement procedures in chapter 252 to select the provider and instead was required to use

---

[29]*Id.*

14

the procedure for the procurement of professional services. Here, Fort Worth did not use its RFQ procedure for soliciting professional services. Instead, it used an RFP calling for competitive sealed proposals. It would not be unreasonable for an employee in Lane's situation to believe that Fort Worth had determined that the solicited services were not professional services based on its use of the competitive procurement process. That is, Lane could reasonably have believed that Fort Worth would not have used a process that would result in it entering into a contract that it knew or should have known was void. This view could be reconciled with *City of Denton* by the language we used in that case, noting that we determined whether government code section 2254.002 covered the contract in that case by looking at the terms of that contract.[30] In other words, we determined that auditing services fell within the definition of accounting based on the facts of that case and did not hold that auditing services are always accounting services.

The question in this case is not whether the contract was for professional services that were exempt from the competitive procurement laws, and we do not decide that question here. The question is whether a reasonably prudent employee in Lane's situation would have believed that Fort Worth was required to comply with the competitive procurement laws. We answer that question in the affirmative and hold that under the circumstances, Lane's report was made in

---

[30] *See City of Denton*, 59 S.W.3d at 768.

15

good faith.[31]  We consequently hold that the trial court did not err by denying Fort Worth's plea to the jurisdiction on this part of Lane's claim, and we therefore overrule Fort Worth's sole issue.

## Conclusion

Having overruled Fort Worth's sole issue, we affirm the trial court's order denying in part Fort Worth's plea to the jurisdiction.


LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT, J.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  December 22, 2011

---

[31]*See* Tex. Loc. Gov't Code Ann. § 252.062.